Filed 1/17/14  P. v. Maxwell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>KEBROCEE AARON MAXWELL,<br><br>　　　　Defendant and Appellant. | F063834<br><br>(Super. Ct. No. 11CM0094)<br><br><br>**OPINION** |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>JIMMY DAVE SERNA,<br><br>　　　　Defendant and Appellant. | F063839<br><br>(Super. Ct. No. 11CM0094) |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>BRETT GALLAGHER, SR.,<br><br>　　　　Defendant and Appellant. | F064407<br><br>(Super. Ct. No. 11CM0094) |

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TRENTON OSHEA DAVIS,<br><br>    Defendant and Appellant. | F065264<br><br>(Super. Ct. No. 11CM0094) |

APPEAL from judgments of the Superior Court of Kings County.  Steven D. Barnes, Judge.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant Kebrocee Aaron Maxwell.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant Jimmy Dave Serna.

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant Brett Gallagher, Sr.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant Trenton Oshea Davis.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellants Trenton Oshea Davis, Kebrocee Aaron Maxwell, Jimmy Dave Serna, and Brett Gallagher, Sr., of kidnapping, second degree robbery, and assault by means likely to produce great bodily injury.  The jury also found that all four personally inflicted great bodily injury and committed the offenses for the benefit of a

criminal street gang.  All appealed their convictions and the appeals have been consolidated.  We reject all of appellants' contentions and affirm the convictions.

## FACTUAL AND PROCEDURAL SUMMARY

On January 17, 2011, Steven Galante was living in Visalia and working at the Best Buy Market in Hanford.  Galante and a coworker, Christina Gallagher,[1] made plans to get together after work.  Christina and a friend, Rosie, picked up Galante when he got off work; Christina brought with her a large quantity of beer.  The three drove to Rosie's house in Hanford.  After they arrived, there were a total of three women and eight men at the house, including Davis, Maxwell, and Gallagher.

During the course of the evening, Galante spoke with everyone at the house. People were hanging out and drinking.  Galante had two or three beers and a shot of whisky during the evening.

About 90 minutes after arriving at the party, Galante, Christina, Maxwell, and another girl, Jewels, drove to a nearby store.  As they were leaving the store, Serna was standing outside.  Christina introduced Serna and Galante; Serna got into the car with the group.

After returning to the party, while in a conversation with Maxwell, Galante informed Maxwell that he had been to prison for possession for sale of drugs and that he was a Northerner or Norteno.  Galante had dropped out of the gang while in prison but did not admit this to Maxwell.  Maxwell told Galante he was a Crip.  Galante was not concerned because Northerners and Crips usually got along in prison.

Sometime later, Christina again was leaving the party with Rosie and Jewels to go to the store; she wanted Galante to go with them.  Galante indicated he would stay

---

[1]Christina is referred to by her first name to avoid any confusion with appellant Gallagher.  No disrespect is intended.

behind; Christina was concerned for his safety because Serna was at the house. Christina did not trust Serna based on previous contact with him.

Shortly after leaving the house, Christina called Galante on his cell phone and stated Rosie had been arrested for driving under the influence of alcohol and she (Christina) needed a ride. Galante told Gallagher Christina needed a ride. Gallagher had been in a room with Maxwell, Davis, Serna, and an individual by the name of Chase discussing rescheduling a Crips meeting.

Galante thought he and Gallagher were going to pick up Christina, but when they walked out of the house, Serna, Maxwell, Davis, and Chase came along. Maxwell asked where Galante was from; Galante responded "Tulare County." Someone hit Galante on the back of the head and he fell to the ground. Maxwell, Serna, Davis, Gallagher, and Chase then repeatedly kicked and hit Galante while yelling "Home Garden Crip." Galante also heard someone say, "this is a Crip thing."

The five men beating Galante threatened to kill him if he made any noise. They took Christina's car keys from Galante, walked him to the car, and pushed him into the trunk. At some point during the attack, Galante's cell phone and wallet were taken. They then closed the trunk and drove away with Galante in the trunk; Galante lost consciousness at some point.

After a while the car stopped. The trunk was opened and Galante was warned to be quiet or he would be killed. Two of the men pulled Galante out of the trunk; Galante fell to the ground. They again beat Galante, hitting him "a dozen, two dozen times." Galante saw each of the appellants hitting him when he looked up a couple of times during the assault. Gallagher was right in front of Galante. They leaned over Galante as they hit and kicked him. After the assault, Galante eventually was able to stumble to a house and ask for help.

Kings County Sheriff's Deputy Nathan Ferrier interviewed Galante at the hospital emergency room. Galante indicated all five of the males at the house attacked him after

4.

Christina left. The interview was short because Galante passed out. Galante had a gash under his eye that required multiple stitches. He had multiple abrasions and bruising to his back and shoulders.

Detective David Dodd drove to the location where Galante had been left by the roadside. Dodd saw two puddles of blood on the road that were consistent with Galante being beaten at that location. A short distance from the puddles of blood were the words "gangsta Crip." A house nearby had gang writing on it.

Dodd again interviewed Galante the next day after his release from the hospital. Galante had interacted mostly with Maxwell at the party and easily was able to identify Maxwell as one of his attackers. Galante also identified Gallagher, Davis, Serna, and Chase from photo lineups.

On October 4, 2011, an information was filed charging Davis, Serna, Maxwell, and Gallagher with kidnapping, second degree robbery, and assault by means likely to produce great bodily injury. As to all three counts, it was alleged all four personally inflicted great bodily injury and committed the offenses for the benefit of a criminal street gang. It also was alleged Maxwell had suffered a prior serious felony conviction and Serna had served a prior prison term.

The parties stipulated that Kings County Sheriff's Deputy Andrew Meyer was an expert in Kings County street gangs. Meyer explained that the Northerners, or Nortenos, and the Crips were rival gangs in Kings County. Crips would try to assault a Norteno who came into their territory and it would be common for the gang members to call out the name of the gang during an assault. Meyer opined that Davis, Serna, Maxwell, and Gallagher were members of the Crips gang.

The jury found all four appellants guilty as charged and found all enhancements true. The trial court imposed an aggregate term of imprisonment of 18 years for Davis and remanded him to the Department of Corrections and Rehabilitation, Division of

Juvenile Facilities (DJF).  An aggregate term of 33 years was imposed on Maxwell, 23 years on Serna, and 23 years on Gallagher, each of whom was sentenced to state prison.

On May 17, 2012, this court ordered the appeals filed by Gallagher, Maxwell, and Serna consolidated.  By order dated February 5, 2013, the appeal filed by Davis was consolidated with the appeals filed by the other three appellants.

## DISCUSSION

Davis raises nine issues.  Maxwell joined in Davis's issues, and Serna joined in all but two issues raised by Davis.  Maxwell raises four issues, in which Serna and Gallagher have joined.  Serna raises two issues, in which Gallagher and Maxwell have joined. Gallagher raises one issue, in which Serna has joined.

The nine issues raised by Davis are (1) error to refuse a pinpoint instruction on aider and abettor liability; (2) insufficient evidence to support the kidnapping conviction; (3) error in failing to instruct sua sponte on the lesser included offense of false imprisonment; (4) reversal of the robbery conviction because failure to instruct on the lesser offense of grand theft person violates due process; (5) instructional error on the great bodily injury enhancement requires those true findings be reversed; (6) insufficient evidence to support the great bodily injury true findings appended to the robbery and kidnapping counts; (7) abuse of discretion in denying probation; (8) sentencing violates Penal Code section 654;[2] and (9) unauthorized sentence requires remand for resentencing in that gang enhancements must be either imposed or stricken.

Maxwell, joined by Serna and Gallagher, contends (1) insufficient evidence to support the robbery conviction; (2) failure to instruct on the lesser included offense of grand theft requires reversal of the robbery conviction; (3) CALCRIM No. 1600, robbery, allowed the jury to convict on an incorrect theory; and (4) the gang enhancements must be reversed because CALCRIM No. 1401 was deficient.

---

[2]All further statutory references are to the Penal Code unless otherwise stated.

6.

Serna, joined by Gallagher and Maxwell, contends (1) defense counsel provided ineffective assistance by failing to suppress the pretrial identification as an unduly suggestive procedure, and (2) the trial court erred prejudicially in allowing Christina to testify she feared for Galante's safety because of Serna's presence.

Gallagher, joined by Serna, contends the trial court violated his constitutional rights when it denied a *Batson/Wheeler*[3] motion.

## I.    Davis's Issues

### A.  *Gang pinpoint instruction*

Davis, joined by Maxwell and Serna, contends it was error to refuse to issue a pinpoint instruction that gang membership is not enough to prove liability as an aider and abettor.  We conclude Davis and Maxwell have forfeited this issue.  Regardless, the contention fails on the merits.

#### Factual summary

At the conference on jury instructions, Serna's counsel argued that there was no evidence Serna aided and abetted.  If Serna were "guilty at all, it would have to be as a direct participant."  Serna's counsel argued that the jury would "misuse" the instructions and find Serna guilty "because of mere membership or perceived membership in a criminal street gang."  Serna's counsel subsequently stated his objection could be cured, "by the Court adding a mere membership in a criminal street gang is insufficient to establish aiding and abetting."

The trial court overruled the objection to the instructions and then proceeded to ask the remaining counsel, "do you stipulate to the instructions that we prepared?"  The remaining counsel, including Davis's and Maxwell's attorneys, responded affirmatively.

---

[3]*Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

**Analysis**

At trial, Davis and Maxwell did not object to the aider and abettor instructions and did not join in the objection raised by Serna's counsel; rather, Davis and Maxwell stipulated to the instructions given by the trial court. Davis also did not request the pinpoint instruction he raises in this appeal; neither did Maxwell. Ordinarily, "A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. [Citation.]" (*People v. Lang* (1989) 49 Cal.3d 991, 1024; see *People v. Rundle* (2008) 43 Cal.4th 76, 151 (*Rundle*).) Here, Davis and Maxwell have forfeited the issue by failing to object or request a pinpoint instruction in the trial court.

Regardless, we discern no prejudice from the failure to object or request a pinpoint instruction for two reasons. First, the jury was instructed correctly on aider and abettor liability with CALCRIM Nos. 400 and 401. These pattern instructions accurately instruct on aider and abettor liability. (See *People v. Battle* (2011) 198 Cal.App.4th 50, 66-67.) Second, Davis and Maxwell were active perpetrators, not aiders and abettors. Galante testified that Davis and Maxwell actively participated in the crimes against him. One who engages in conduct that is an element of the offense is a perpetrator, not an aider and abettor. (*People v. Cook* (1998) 61 Cal.App.4th 1364, 1371 (*Cook*).)

The same holds true for Serna. Galante testified that five men, including Serna, actively participated in the attack on him. Serna's own counsel argued that Serna's liability, if any, was as a direct participant, not an aider and abettor. As an active participant and not an aider and abettor, the aider and abettor instructions were inapplicable to Serna. (*Cook, supra,* 61 Cal.App.4th at p. 1371.) We presume the jury correctly applied and followed the instructions given by the trial court. (*People v. Williams* (2000) 79 Cal.App.4th 1157, 1171.)

**B. Kidnapping conviction**

Davis, Maxwell and Serna assert their kidnapping convictions violate due process and must be reversed because the evidence was insufficient to establish movement for a substantial distance, which is an element of the offense. We disagree.

**Standard of review**

When assessing a state law challenge to the sufficiency of the evidence, the appellate court examines the entire record in the light most favorable to the judgment below to determine whether it contains substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The same standard applies when assessing a federal constitutional due process claim: "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318, fn. omitted.) "The standard is the same, regardless of whether the prosecution relies mainly on direct or circumstantial evidence. [Citation.]" (*People v. Vazquez* (2009) 178 Cal.App.4th 347, 352 (*Vazquez*).)

"'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it.' [Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245; see *Jackson v. Virginia, supra*, 443 U.S. at p. 319.) Generally, the testimony of a single witness is sufficient to prove a disputed fact unless the testimony is inherently improbable or physically impossible. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) The trier of fact makes credibility determinations and resolves factual disputes. (*People v. Estrella* (1995) 31 Cal.App.4th 716, 724-725.) An appellate court will not substitute its evaluation of a witness's credibility for that of the fact finder. (*Vazquez, supra*, 178 Cal.App.4th at p. 352.)

**Analysis**

The elements of kidnapping are "(1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance. [Citation.]" (*People v. Jones* (2003) 108 Cal.App.4th 455, 462, fn. omitted.) Davis challenges only the evidence supporting the last element, movement for a substantial distance.

Galante testified he was pushed into the trunk of Christina's car and driven to an unknown location, where he was hauled out of the trunk, beaten again, and left on the ground. Although Davis claims there was no proof of the exact distance Galante was moved, Galante's testimony was sufficient evidence of substantial movement.

"[F]or simple kidnapping asportation the movement must be 'substantial in character' [citation], but … the trier of fact may consider more than actual distance." (*People v. Martinez* (1999) 20 Cal.4th 225, 235 (*Martinez*).) "'[S]ection 207 does not speak in terms of a movement of any specific or exact distance.' [Citation.] Accordingly, nothing in the language of section 207(a) limits the asportation element solely to actual distance. Section 207(a) proscribes kidnapping or forcible movement, not forcible movement for a specified number of feet or yards." (*Id.* at p. 236.)

Here, the undisputed evidence establishes that Galante was transported at night, for an unknown distance, and then left lying in the roadway in an area he did not recognize after being beaten severely. Galante did not need to testify to an exact distance, nor did an exact distance need to be established. (*Martinez, supra,* 20 Cal.4th at p. 236.) Galante's movement was substantial in nature, regardless of the exact distance; he was transported from the residence where the initial beating took place to another location he did not recognize. The element of asportation was satisfied. (*People v. Burney* (2009) 47 Cal.4th 203, 251.)

10.

## C. *False imprisonment instruction*

Davis, joined by Maxwell and Serna, next claims his kidnapping conviction should be reversed because the trial court's failure to instruct sua sponte on the lesser included offense of false imprisonment violated his right to due process. We disagree.

### Standard of review

"A criminal defendant is entitled to an instruction on a lesser included offense only if [citation] 'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*. [Citations.]" (*People v. Memro* (1995) 11 Cal.4th 786, 871.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could … conclude[]"' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) If substantial evidence exists, the trial court has a sua sponte duty to give the instruction, even if the evidence supporting the lesser offense is inconsistent with the accused's defense. (*People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1016-1017.)

An appellate court independently reviews a trial court's failure to instruct on a lesser included offense. (*People v. Waidla* (2000) 22 Cal.4th 690, 733 (*Waidla*).)

### Analysis

False imprisonment is a necessarily included lesser offense of kidnapping. (*People v. Magana* (1991) 230 Cal.App.3d 1117, 1121.) The difference between the two is that false imprisonment can occur without any movement or asportation of the victim; kidnapping requires a degree of asportation. (*People v. Reed* (2000) 78 Cal.App.4th 274, 284.)

Here, there is undisputed evidence that supported the element of asportation and a completed kidnapping; there was no evidence presented that Galante was not moved from the property where the initial beating took place to another location. Substantial evidence thus did not support a conclusion that the lesser offense of false imprisonment, but not kidnapping, was committed. The trial court therefore had no duty to instruct on the lesser included offense of false imprisonment.

### D. Great bodily injury instructions

Davis, again joined by Maxwell and Serna, contends the great bodily injury findings must be reversed because the jury was not instructed with both theories of liability under CALCRIM No. 3160. Specifically, the jury was instructed on the basis for finding appellants liable for a group assault on Galante, but not given the option of finding that one of them alone could have caused the great bodily injury. Davis also contends the trial court failed to instruct the jury that in order to find the enhancement true, Davis had to know, or reasonably should have known, that his use of force in combination with others would result in great bodily injury.

Again, these issues have been forfeited by failing to object in the trial court.

The trial court instructed the jury with CALCRIM No. 3160. Davis, Maxwell and Serna did not object to the instruction or request any clarifying language. All parties had a copy of the jury instructions as the trial court proposed to give them. The trial court then asked the parties if they were prepared to stipulate to those instructions, including CALCRIM No. 3160, as prepared and presented. Davis, Maxwell and Serna affirmatively stipulated to this instruction through their counsel.

Appellants may not now assert that CALCRIM No. 3160 was incomplete or needed clarification; they have forfeited the issue by failing to object or request clarification in the trial court. (*Rundle, supra,* 43 Cal.4th at p. 151.)

Regardless, if we were to address this issue on the merits, the contention would fail. CALCRIM No. 3160 accurately informed the jury it could find the great bodily

injury enhancement true if (1) two or more people acting at the same time assaulted Galante; (2) Davis personally used physical force on Galante during the group assault; (3) the physical force used by Davis on Galante, in combination with the force used by others, caused Galante to suffer great bodily injury; and (4) Davis applied substantial force to Galante. There was no evidence at trial that Davis acted alone in assaulting Galante; Galante testified all the appellants hit and kicked him. Additionally, CALCRIM No. 3160 accurately instructs on the group beating theory of liability. (*People v. Dunkerson* (2007) 155 Cal.App.4th 1413, 1418.)

Moreover, section 12022.7 does not require the intent Davis and the other two appellants seek to impose, namely, that they should have known their use of force in combination with others would result in great bodily injury. Section 12022.7 was amended in 1995 to delete any requirement that a defendant intend to inflict such injury. (Stats. 1995, ch. 341, § 1, pp. 1851-1852; *People v. Carter* (1998) 60 Cal.App.4th 752, 756.)

### E. Sufficiency of evidence supporting great bodily injury enhancements

Davis, Maxwell, and Serna maintain the great bodily injury enhancements appended to the robbery and kidnapping convictions must be reversed on the basis of insufficiency of the evidence. Specifically, they assert the injuries that constitute great bodily injury occurred before Galante was transported, which is the basis of the kidnapping charge, and there is no proof the injuries were inflicted after the intent to rob Galante was formed. We disagree with this contention.

**Analysis**

Section 12022.7 imposes additional punishment on anyone who personally inflicts great bodily injury on a person in the commission of a felony. For purposes of imposition of the great bodily injury enhancement, "'offenses committed during escape from the scene of the crime must be deemed acts in the commission of the crime.'" (*People v. Mixon* (1990) 225 Cal.App.3d 1471, 1488 (*Mixon*).) Consequently, in

13.

determining if great bodily injury was inflicted on Galante in the commission of a crime, we look to the continuous course of events. The "commission" of the felony does not end until the perpetrators have relinquished control of the victim and have fled. (*Ibid.*)

Here, Galante received a brutal beating in which each appellant, Davis, Maxwell, Serna, and Gallagher, kicked and hit him in the head while yelling "Home Garden Crip." Galante was beaten so badly that he lost consciousness when placed in the trunk of the car. The beating continued after Galante was transported in the trunk of the car and left on the roadside. At some point in this journey Galante was robbed. The beatings, kidnapping, and robbery all occurred before Davis, Maxwell, Serna, and Gallagher relinquished control over Galante.

The four appellants worked together in assaulting Galante before kidnapping him; the four were together in the car while transporting Galante in the trunk—the kidnapping; and the four participated in beating and kicking Galante after pulling him from the car and dropping him on the roadside. The jury reasonably could have inferred that Davis was acting in concert with the other three perpetrators throughout the kidnapping and robbery because he was present throughout; he participated in the series of beatings in both locations; and he was in the car while Galante was transported in the trunk and therefore was present when Galante was robbed at some point in this sequence of events. (*People v. Hill* (1998) 17 Cal.4th 800, 851-852.)

Circumstantial evidence establishes that all four appellants acted jointly to rob and kidnap Galante, and the beating inflicted on Galante by all four appellants on the roadside was part of this continuous course of conduct. The roadside beating consisted of Galante being hit "a dozen, two dozen times." The injuries inflicted upon Galante on the roadside constituted more than transitory or short-lived bodily distress. (*Mixon, supra,* 225 Cal.App.3d at p. 1489.) There was blood on the road and two separate puddles of blood at the residence where Galante sought help after the beating. He had multiple abrasions

14.

and bruising. This evidence establishes that the injuries were more than transitory, short-lived bodily distress. (*Ibid.*)

The claim the evidence was insufficient to sustain the great bodily injury enhancements appended to the robbery and kidnapping counts thus fails.

### F. Lesser included instruction for robbery

Appellants contend the trial court erred and violated their due process rights by failing to instruct sua sponte on the lesser included offense of grand theft person, consequently his robbery conviction must be reversed. Specifically, they maintain it was a close question as to whether the intent to steal was formed before or during the use of force, as opposed to after the use of force. If formed after use of force, they contend the offense is grand theft person, not robbery, and the trial court erred in failing to so instruct. We conclude the trial court did not err prejudicially in failing to instruct sua sponte on the lesser included offense of grand theft person.

As stated *ante*, the trial court has a sua sponte obligation to instruct on a lesser included offense when there is substantial evidence from which a reasonable jury could conclude the defendant committed the lesser, but not the greater, offense. (*Breverman, supra,* 19 Cal.4th at p. 162.) We apply de novo review to a claim that the trial court failed to give a required instruction on a lesser included offense. (*Waidla, supra,* 22 Cal.4th at p. 733.) Failure to give a required instruction warrants reversal only if there is a reasonable probability the defendant would have obtained a more favorable outcome if it had been given. (*Breverman,* at p. 178.)

Robbery is the felonious taking of personal property from another, against his or her will, accompanied by means of force or fear. (§ 211; *People v. Marquez* (2000) 78 Cal.App.4th 1302, 1308.) The force or fear required need not be a physical assault, but must be more than an incidental touching. (*People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246.) When the element of force or fear is absent, the taking from a person is

15.

grand theft, which is a lesser included offense of robbery. (*People v. Jones* (1992) 2 Cal.App.4th 867, 869.)

Here, the evidence established that the four appellants were having a group discussion in the time leading up to the initial assault. When Galante walked outside the house, appellants followed and commenced a group assault on Galante. Galante was hit in the back of the head and knocked to the ground while appellants yelled out "Home Garden Crip." Galante saw each appellant participate in beating him while he was at the house; appellants beat Galante again after he was forced into the trunk of a car and driven to an unknown location. Galante had been carrying a cell phone and wallet in his pants pocket. After the brutal assaults, his cell phone and wallet were missing.

Substantial evidence supports the strong inference that appellants took Galante's cell phone and wallet during either one of the brutal attacks or when Galante was unconscious as a result of the beatings. Also, contrary to appellants' claims, there is no requirement that the victim be aware his property is being taken from his presence. (*People v. Jackson* (2005) 128 Cal.App.4th 1326, 1330-1331.) A victim of robbery may be unconscious, or dead, when the property is taken, so long as the defendant used force against the victim to take the property. (*Ibid.*)

Appellants also claim there was no evidence the intent to steal Galante's personal property was formed before or during the use of force or fear against Galante, as required for robbery (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 166 (*Letner and Tobin*)), and thus a lesser included instruction should have been given sua sponte. We conclude any error is harmless.

The jury was instructed that the prosecution had to prove appellants did the acts charged, and that they acted with a particular intent and mental state. The jury also was instructed that "[t]he defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery."

Absent some affirmative indication in the record to the contrary, and here there is none, we presume the jury followed the instructions given. (*People v. Holt* (1997) 15 Cal.4th 619, 662 (*Holt*).)

In *People v. Sedeno* (1974) 10 Cal.3d 703 (*Sedeno*), disapproved on other grounds in *Breverman, supra,* 19 Cal.4th at page 165, the California Supreme Court held that the failure of the trial court to instruct the jury sua sponte on a lesser included offense was harmless beyond a reasonable doubt under circumstances in which "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." (*Sedeno,* at p. 721.)

This is precisely what happened here. The jurors resolved the issue of the timing of formation of intent adversely to appellants under other, properly given instructions. Consequently, any error in failing to instruct on the lesser included offense of grand theft person is necessarily harmless. (*Sedeno, supra,* 10 Cal.3d at p. 721.)

### G.  Denial of probation

Davis acknowledges that he was statutorily ineligible for probation, unless the trial court found unusual circumstances warranted a grant of probation. He contends the trial court abused its discretion in concluding unusual circumstances did not exist.[4]

**Factual summary**

The probation report noted that Davis had no record of criminal offenses, but noted that the instant offenses were serious and unprovoked; Galante was vulnerable

---

[4]Maxwell joined in this argument, although it has no application to him whatsoever. Therefore, there is no analysis of this issue as to Maxwell.

because he was outnumbered four to one; Galante suffered serious injuries and incurred medical bills in excess of $43,000; and Davis was an active participant in the crimes. The probation report also noted that Davis had been arrested for the instant crimes after fleeing to Las Vegas with Gallagher. The two were apprehended at a Las Vegas residence along with three to four pounds of marijuana.

The trial court ordered Davis remanded to DJF for a diagnostic study and report prior to sentencing. The correctional counselor found Davis generally to be unremorseful. Davis chose to participate in a gang lifestyle, participated in an unprovoked and serious assault, and then fled the state to avoid capture and the consequences of his crimes. Davis participated in the crimes against Galante in order to avoid trouble with his fellow gang members. The correctional counselor recommended Davis be incarcerated. The staff psychologist recommended probation. The associate warden agreed with the recommendation of incarceration and felt Davis was a poor candidate for probation and a risk to society.

The trial court found there were no unusual circumstances warranting probation. The trial court went on to cite the nature and seriousness of the offenses and that the crimes were unprovoked; the victim was vulnerable and outnumbered four to one; the victim had severe injuries and substantial medical bills; the victim was moved from one location to another; Davis was an active participant in the crimes; Davis had opportunities to withdraw from the commission of the offenses, but did not; and Davis did not seem to be truly remorseful or accept responsibility for his role in the offenses.

In reaching the conclusion that there were no unusual circumstances warranting probation, the trial court reviewed the probation report, the diagnostic study, the psychological report, the aggravating and mitigating circumstances of the offenses, the victim's statement, and the letters of support from friends and family of Davis. Ultimately, the trial court imposed the midterm of imprisonment.

**Standard of Review**

We review a trial court's determination that a case may or may not be unusual for an abuse of discretion. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178 (*Stuart*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) We will not find an abuse of discretion unless the court's action exceeded the bounds of reason or contravened the uncontradicted evidence. (*Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334, 1340.) Further, "if the statutory limitations on probation are to have any substantial scope and effect, 'unusual cases' and 'interests of justice' must be narrowly construed .…" (*People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216, 1229.)

**Analysis**

Davis admits that he was presumptively ineligible for probation based on section 1203, subdivision (e)(3), which states in part:

"(e) Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons: [¶] … [¶]

"(3) Any person who willfully inflicted great bodily injury or torture in the perpetration of the crime of which he or she has been convicted."

In determining whether a statutory limitation on probation has been overcome, the trial court is required to use the criteria set forth in California Rules of Court, rule 4.413(c),[5] which provides in part:

> "The following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate:
>
> "(1) *Facts relating to basis for limitation on probation*

---

[5]All further references to rules are to the California Rules of Court.

"A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including:

"(A) The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; … [¶] … [¶]

"(2) *Facts limiting defendant's culpability*

"A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including:

"(A) The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence."

The trial court applied the rule 4.413(c) criteria and concluded the crimes committed by Davis were "substantially more serious when compared to other instances of the same crimes." The trial court also found Davis was an active participant, with substantial opportunities to withdraw, who chose not to withdraw and instead to participate fully, and who later fled the state with a codefendant. Clearly, the trial court reached the conclusion that Davis was not coerced in any way to participate.

The trial court would not be required to find the case to be unusual even if it had found that Davis acted under some duress or the offense was substantially less serious than the typical case in which probation is presumptively inappropriate. "Under rule 4.413, the existence of any of the listed facts does not necessarily establish an unusual case; rather, those facts merely '*may* indicate the existence of an unusual case.' [Citation.] This language indicates the provision 'is permissive, not mandatory.' [Citation.] '[T]he trial court may *but is not required* to find the case unusual if the relevant criterion is met under each of the subdivisions.' [Citation.]" (*Stuart, supra*, 156 Cal.App.4th at p. 178, italics added.)

We conclude the trial court's findings that Davis did not present an unusual case within the meaning of section 1203 and rule 4.413 were supported by the evidence. The trial court's decision was within the bounds of reason and was not an abuse of discretion.

### H. Section 654

Davis, Maxwell, and Serna contend the trial court should have stayed imposition of punishment on the robbery and assault convictions pursuant to section 654 instead of imposing consecutive terms on the kidnapping, robbery, and assault counts. They are incorrect.

"As interpreted by the courts, Penal Code section 654 precludes multiple punishment where several crimes are committed during an indivisible course of conduct with a single criminal objective. Multiple punishment is permissible if the defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other. The focus of the inquiry is the defendant's intent and objective. [Citations.]" (*People v. Goodall* (1982) 131 Cal.App.3d 129, 147.)

Whether multiple convictions were part of an indivisible transaction is primarily a question of fact for the trial court. (*People v. Coleman* (1989) 48 Cal.3d 112, 162 (*Coleman*); *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) We review a challenge under section 654 for substantial evidence to support the trial court's determination. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.) Moreover, this deferential standard of review applies whether the trial court's findings are explicit or implicit. (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1585.)

Applying these principles here, we conclude the trial court's determination that section 654 was inapplicable is supported by substantial evidence. The offenses involved separate intents and objectives and therefore were punishable as separate crimes. (*Coleman, supra,* 48 Cal.3d at p. 162 [in determining whether facts call for application of § 654, threshold inquiry is to determine defendant's objective and intent]; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [whether a course of conduct constitutes one

indivisible act or more than one act depends on defendant's criminal intent and objective].)

"Assault reflects an intent to perform an act that, by its nature, will probably and directly result in the application of physical force to another person. [Citation.] Robbery, while involving the use of force or fear, reflects an intent to deprive the victim of property." (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1526.) Culpability under section 207, subdivision (a), simple kidnapping, arises independently of the commission or attempted commission of any other offense. "[A] person who forcibly carries and transports another, capable of giving consent, against his or her will, is guilty of kidnapping 'however good or innocent [the defendant's] motive or intent may otherwise be.' [Citation.]" (*People v. Kelly* (1990) 51 Cal.3d 931, 959.)

Here, Davis joined with the other three appellants in brutally assaulting Galante at the house where they were partying; an assault was complete at that point. Yet, after robbing and kidnapping Galante, they viciously hit and kicked him again, completing another assault, which served no purpose other than to inflict further injuries. The assault on Galante by four gang members evinced an intent to inflict severe injuries and an objective to harm someone who was not a part of their gang; the assault was not incidental to robbery or kidnapping. As they hit Galante, the four appellants called out that it was "a Crip thing" after Galante indicated he was a Northerner.

After the initial assault, the four appellants threatened Galante with death if he made any noise; they then forced him into the trunk of a car and moved him to an unknown location. This conduct evinced an intent and objective to deprive Galante of freedom of movement, to place Galante in a situation where he was less likely to obtain help, and also to frighten him into silence.

At some point in the chain of events, appellants took Galante's wallet and cell phone. The robbery demonstrated a completely separate intent and objective from the

assault and kidnapping, namely, to deprive Galante of items of monetary value the four appellants could use or sell for cash.

### I. *Sentencing on enhancements*

If the robbery and assault convictions may be punished separately, then Davis and Maxwell contend the trial court imposed an unauthorized sentence when it stayed imposition of punishment on the gang enhancements appended to the robbery and assault counts. The People agree, as do we.

The record reflects the trial court stayed imposition of the gang enhancements appended to the subordinate counts when sentencing all four appellants—Davis, Maxwell, Serna, and Gallagher. The trial court lacked the authority to stay imposition of punishment on the gang enhancements; thus, an unauthorized sentence was imposed. (*People v. Flores* (2005) 129 Cal.App.4th 174, 187.)

We will remand the cases to allow the trial court to exercise its discretion either to impose or to strike the section 186.22, subdivision (b) gang enhancements appended to the robbery and assault counts. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)

The People also contend, however, that the great bodily injury enhancements appended to the subordinate counts, which were stayed pursuant to section 654, must be imposed or stricken. We disagree.

The trial court was authorized to stay imposition of punishment on the subordinate great bodily injury counts. Only one enhancement for great bodily injury can be imposed when multiple offenses are committed against a single victim on a single occasion. (*People v. Alvarez* (1992) 9 Cal.App.4th 121, 127.)

## II. Maxwell's Issues

### A. *Robbery conviction*

Aside from his contention that the trial court had a sua sponte duty to instruct on the lesser offense of grand theft person, addressed in part I, *ante,* Maxwell argues the evidence was insufficient to sustain the robbery conviction and CALCRIM No. 1600, the

robbery instruction, misstates the law. For these reasons the robbery conviction must be reversed. Serna and Gallagher have joined in these arguments.

### Sufficiency of the evidence

Maxwell contends the robbery conviction must be reversed because (1) there was no substantial evidence Galante was objectively afraid of being robbed; (2) the intent to take Galante's property preceded the use of force or fear; (3) Galante was conscious at the time of the taking; and (4) that the use of force or fear exceeded that necessary to take the wallet and phone. We disagree with each of these assertions.

First, "fear" may be inferred from the circumstances, despite even superficially contrary testimony of the victim. (*People v. Renteria* (1964) 61 Cal.2d 497, 499 [in robbery prosecution, People not bound by clerk's testimony that he was not in fear, since there was other evidence to support conclusion "that he acted in fear and would not have disgorged the contents of his employer's till except in fear of the harm which might come to him or his employer if he failed to comply with defendant's demands"]; see *People v. Borra* (1932) 123 Cal.App. 482, 484-485 [not necessary that there be proof of actual fear, as fear may be presumed where there is just cause for it, and thus "In spite of the bravado of the merchant in declaring that he was not much afraid, we are inclined to believe he meant he was not afraid of receiving bodily harm so long as he complied with the demands of the robber."]; *People v. Brew* (1991) 2 Cal.App.4th 99, 104 [cashier in retail store robbed when defendant, considerably larger than she, with alcohol on his breath, stood close to her, without barrier or counter between them, causing cashier to step back from cash register drawer in fear]; *People v. Franklin* (1962) 200 Cal.App.2d 797, 798 [although no testimony by checker that she handed over money because she was afraid, evidence sufficient to show that taking was by means of force or fear].) Fear in this case is certainly inferred from the level of viciousness of the beating inflicted on Galante as well as the threat to kill him if he made any noise.

24.

Second, as we discussed in part I, *ante*, the question of whether appellants formed the intent to take Galante's property before or during the use of force or fear has been necessarily resolved adversely to appellants by virtue of the properly instructed jury's verdict. Clearly, the intent to take Galante's personal property was formed at some point because Galante was in possession of his cell phone and wallet before the initial attack, and, after the conclusion of the criminal activity by appellants, Galante's cell phone and wallet were missing. The jury was instructed that the People had to prove appellants did the acts charged, and that they acted with a particular intent and mental state required. The jury also was instructed that "The defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery." Absent some affirmative indication in the record to the contrary, and here there is none, we presume the jury followed the instructions given. (*Holt, supra,* 15 Cal.4th at p. 662.)

Third, as for the claim that the evidence had to show Galante was conscious at the time of the taking, the law does not require this. A victim of robbery may be unconscious, or dead, when the property is taken, so long as the defendant used force against the victim to take the property. (*Jackson, supra,* 128 Cal.App.4th at pp. 1330-1331.)

The last claim is there was no evidence the force used exceeded that necessary to take the personal property from Galante. In other words, there was no showing Galante was "shoved to obtain his wallet or phone, or that his pants pockets were ripped to take the wallet or phone, or that he was injured in any way so that his wallet or phone could be taken."

Such a specific evidentiary showing is not required however. If it were, every robber would be wise to beat the victim unconscious so as to avoid being convicted of robbery.

Here, Galante was subjected to a brutal gang beating by all four appellants, initially at the house in Hanford and again at an unknown location after being kidnapped. We conclude that striking Galante repeatedly with fists and feet, thus rendering Galante unconscious at times and unable throughout to resist, was more than sufficient force to satisfy the requirement that force or fear be used to accomplish the taking. (*People v. Dreas* (1984) 153 Cal.App.3d 623, 628.)

### CALCRIM No. 1600

Maxwell, joined by Serna and Gallagher, asserts CALCRIM No. 1600 allowed the jury to convict appellants of robbery, even erroneously, because it failed to instruct that the use of force and fear and the taking of property had to occur while Galante was conscious.

The three appellants did not object to CALCRIM No. 1600, nor did they request any clarifying or amplifying instruction. Failure to object to an instruction, or to seek clarifying or amplifying instructions in the trial court, generally constitutes a forfeiture of any claim the instruction was incomplete, ambiguous, or unclear. (*People v. Riggs* (2008) 44 Cal.4th 248, 309 (*Riggs*).) Anticipating this, the three appellants contend the issue is not forfeited because CALCRIM No. 1600 misstates the law. They are incorrect.

CALCRIM No. 1600 correctly sets forth and instructs the jury on the offense of robbery. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 945.) There is no requirement that a victim be aware his or her personal property is being taken from them by force or fear. (*Jackson, supra,* 128 Cal.App.4th at pp. 1330-1331.) As noted previously, the taking can occur while the victim is unconscious from the use of force or fear, as apparently was the case with Galante. (*Letner and Tobin, supra,* 50 Cal.4th at p. 167.)

### B. Gang enhancement

Maxwell, joined by Serna and Gallagher, contends the gang enhancements appended to all three counts must be reversed because CALCRIM No. 1401 was deficient

and failed to instruct jurors correctly and adequately that the defendant must have knowledge it is gang conduct he is assisting, furthering, or promoting. As such, the three appellants contend the instruction is fatally deficit and the gang enhancements must be reversed. We disagree.

Again, the three appellants did not request a clarifying or amplifying instruction and thus the issue is forfeited. (*Riggs, supra,* 44 Cal.4th at p. 309.)

Regardless, CALCRIM No. 1401 correctly instructs on the elements of the gang enhancement. The trial court instructed the jury with CALCRIM No. 1401 on the gang-benefit allegation in relevant part as follows:

> "If you find the defendants guilty of the crimes charged in Counts ONE, TWO AND THREE … you must then decide whether, for each crime, the People have proved the additional allegation … [¶] … that: [¶] 1. The defendant committed the crime for the benefit of, at the direction of, or in association with a criminal street gang; [¶] AND [¶] 2. The defendant intended to assist, further, or promote criminal conduct by gang members."

The California Supreme Court, expressly disapproving the contention raised by appellants, has held, "in accordance with the plain language of [the criminal street gang statute], that the scienter element of the enhancement requires only 'the specific intent to promote, further, or assist in *any* criminal conduct by *gang members*.'" (*People v. Albillar* (2010) 51 Cal.4th 47, 51 (*Albillar*), quoting § 186.22, subd. (b)(1).) As the *Albillar* court stated, "There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*. [Citations.]" (*Albillar,* at p. 67.)

The *Albillar* court specifically rejected the contention that the enhancement required *a specific intent to aid the gang*. The *Albillar* court held, "If substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the

27.

specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar, supra,* 51 Cal.4th at p. 68.)

Here, evidence showed appellants were gang members who yelled out "Home Garden Crip" and said "This is a Crip thing" while committing the crimes against Galante. Substantial evidence establishes appellants intended to commit the charged offenses with fellow gang members and thus the fair inference is that appellants had the requisite intent to satisfy section 186.22, subdivision (b). (*Albillar, supra,* 51 Cal.4th at pp. 67-68.)

## III.   Serna's Issues

### A.  *Ineffective assistance of counsel*

Serna, joined by appellants Gallagher and Maxwell, contends defense counsel rendered ineffective assistance by failing to move to suppress Galante's identification of them because the identifications were based on an unduly suggestive procedure.

### Factual background

Dodd spoke with Galante after Galante was released from the hospital. When Dodd met with Galante, the detective showed him a "six-pack" photo lineup to determine if Galante could identify any of his attackers. Prior to showing Galante any photos, Dodd admonished him with standard language read to all witnesses before they were asked to view a photo lineup and had Galante sign the admonishment. The admonishment read:

> "You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not discuss the case with other witnesses nor indicate in any way that you have identified someone."

The photo lineup is selected using a specific, standard method. Photographs of people the sheriff's department believes to be suspects are selected for the lineup, and a California Department of Justice computer program then selects photographs of five

28.

other people who are similar to the suspect's photo in terms of gender, age, race, and physical characteristics. The photos are then positioned on a piece of paper as a "six-pack photo lineup." If there is more than one suspect and more than one photo lineup, the suspect's pictures are positioned differently on the paper in each six-pack lineup. No names are on the lineup shown to a witness.

When shown the lineup for Serna, Galante was not certain Serna was involved in the attack. When shown a larger size of the same photograph of Serna used in the photo lineup, Galante was "a hundred percent positive" in the identification. When shown the lineup containing Gallagher's picture, Galante picked out Gallagher as one of his attackers without "hesitation or doubt." On the identification of Maxwell, a detective at police headquarters prepared a lineup using standard procedures and e-mailed the lineup to Dodd. Dodd showed the lineup to Galante using his cell phone; Galante positively identified Maxwell as one of his attackers.

On cross examination, Dodd acknowledged that when Galante was questioned shortly after the attack, he never gave a physical description of his attackers that matched Serna, and he never specifically named Serna as an attacker. Defense counsel also cross-examined Galante on these points. In addition, defense counsel questioned Dodd about whether a single person showing of suspects would be unduly suggestive and implied Dodd had engaged in such a practice in this case with respect to Serna's picture.

**Analysis**

"The burden of proving ineffective assistance of counsel is on the defendant. [Citation.]" (*People v. Babbitt* (1988) 45 Cal.3d 660, 707.) A criminal defendant must show both deficient performance ("that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates") and prejudice ("that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings"). (*People v. Price* (1991) 1 Cal.4th 324, 386.)

With regard to the question of whether counsel's performance was objectively unreasonable, "'"Reviewing courts defer to counsel's reasonable tactical decisions … and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" [Citations.] "'"[W]e accord great deference to counsel's tactical decisions" [citation], and … "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation].'" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254 (*Jones*); accord, *People v. Weaver* (2001) 26 Cal.4th 876, 928 (*Weaver*) ["'even "debatable trial tactics" do not "constitute a deprivation of the effective assistance of counsel"'"].) And "[i]n order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission. [Citations.]" (*People v. Ray* (1996) 13 Cal.4th 313, 349.) "'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'" (*Jones,* at p. 1254.)

Here, Serna cannot establish ineffective assistance of counsel because the identification procedure was not unduly suggestive; he has failed to demonstrate any prejudice; and the record reflects defense counsel made a tactical decision to challenge the pretrial identification of Serna by cross-examination of Dodd and Galante.

"A pretrial identification procedure violates a defendant's due process rights if it is so impermissibly suggestive that it creates a very substantial likelihood of irreparable misidentification. The defendant bears the burden of proving unfairness as a 'demonstrable reality,' not just speculation. [Citations.]" (*People v. Contreras* (1993) 17 Cal.App.4th 813, 819 (*Contreras*); see *People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.)

Serna argues showing Galante a larger picture of him, after Galante was unable to identify him from the six-pack lineup, was unduly suggestive. A "single person

30.

showup," however, is not inherently unfair. (*People v. Ochoa* (1998) 19 Cal.4th 353, 413 (*Ochoa*); *People v. Clark* (1992) 3 Cal.4th 41, 136.)

In *Ochoa,* the witness could not identify the defendant from a six-pack lineup and wanted to see profile views. The officer showed a profile view of only the defendant to the witness, after which the witness identified the defendant with certainty. (*Ochoa, supra,* 19 Cal.4th at p. 412.) The *Ochoa* court held the identification process was not unduly prejudicial because the state had not initiated an unduly suggestive identification procedure. Rather, the state provided "useful further information." (*Id.* at p. 413.)

Similarly, in *Contreras, supra,* 17 Cal.App.4th at page 820, a witness was shown a single photograph of the defendant after the witness was unable to select the defendant from a photographic lineup. This was held not to be a violation of due process because the jury was made aware of the witness's failure to select the defendant from photographic lineups and the jury was able to view the single photograph of the defendant.

Here, Dodd gave standard admonishments before showing any photos to Galante, and the photo lineups were prepared according to standard procedures. There was no initial procedure that was unduly suggestive. Galante was uncertain Serna was a perpetrator when shown the six-pack lineup, and, after seeing a larger picture of Serna, was able to identify Serna. This scenario is similar to that found in *Ochoa* and *Contreras*, where the witness needed a larger photograph or a different view in order to see the defendant's features clearly and make a positive identification. We conclude the pretrial identification procedure was not unduly suggestive. (*People v. Kennedy* (2005) 36 Cal.4th 595, 609, overruled on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

Further, Serna cannot show prejudice from failing to move to exclude the pretrial identification of him because Galante positively identified Serna at trial as one of the perpetrators of the attack. In addition, Christina testified that Serna was one of those at

31.

the house when she left to go to the store and the attack on Galante took place immediately thereafter.

Finally, defense counsel cross-examined both Dodd and Galante and pointedly suggested the pretrial identification of Serna was suspect. That Serna, and apparently Gallagher and Maxwell, now wish to second-guess defense counsel's decision not to challenge the pretrial identification, but instead to attack its credibility in cross-examination, does not constitute a basis for finding ineffective assistance of counsel. "'"[W]e accord great deference to counsel's tactical decisions" [citation], and … "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation].'" (*Jones, supra,* 29 Cal.4th at p. 1254; accord, *Weaver, supra,* 26 Cal.4th at p. 928 ["'even "debatable trial tactics" do not "constitute a deprivation of the effective assistance of counsel"'"].)

We reject the claim of ineffective assistance of counsel.

### B. Character evidence

Serna, again joined by Maxwell and Gallagher, challenges the trial court's allowing Christina to testify concerning her past experiences with Serna.

#### Factual summary

During Christina's testimony, the prosecutor asked her if, when she left the house just prior to the assault on Galante, there was anyone at the house she did not trust. Defense counsel objected to the question on the grounds it called for speculation; the trial court overruled the objection. Christina then responded that she did not trust Serna. When the prosecutor asked Christina what caused her not to trust Serna, defense counsel again objected and the objection was overruled. Christina responded that it was Serna's attitude from "previous run-ins" that caused the lack of trust. When the prosecutor asked Christina to explain further, defense counsel raised an Evidence Code section 352 objection, which the trial court sustained.

The prosecutor requested a hearing on the ruling; the trial court excused the jurors and held an Evidence Code section 352 hearing. The trial court asked for an offer of proof as to what testimony the prosecutor was seeking to elicit from Christina about why she did not trust Serna. Christina explained that Serna previously had hit her former boyfriend for no reason. The trial court precluded Christina from testifying to this incident and also precluded any testimony about Serna having served a prison term.

The prosecutor contended Christina's testimony that she was fearful of Serna was important because Serna planned to present an alibi defense and Christina's testimony would place him at the house at the time of the attack on Galante. The trial court ruled that Christina could testify she did not think it was safe for Galante to remain at the party by himself. Defense counsel argued that this was a "back door" method of introducing character evidence about Serna. At a hearing outside the jury's presence on this proposed testimony, defense counsel asserted that this testimony from Christina would be cumulative because Christina already had testified that Serna was present. The trial court stated that it was "balancing these interests against each other."

Ultimately, in the presence of the jury, the prosecutor was allowed to ask Christina if, when she left for the store, she was in fear for Galante's safety. When Christina replied affirmatively, the prosecutor asked if the reason was because Serna was present at the house. Christina responded, "Yes."

### Analysis

We generally apply an abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence. (*Waidla, supra,* 22 Cal.4th at p. 717.) Unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice, reversal of the judgment is not required. (*People v. Hartsch* (2010) 49 Cal.4th 472, 497.) Here, there was no abuse of discretion.

Christina's testimony that she feared for Galante's safety because Serna was at the house was admissible under Evidence Code section 1250, subdivision (a)(2) to explain

33.

Christina's conduct in urging Galante to accompany her to the store. (See *People v. Whitt* (1990) 51 Cal.3d 620, 642-643.) Further, the statement also was relevant to contradict Serna's alibi defense. Her testimony that she feared for Galante's safety because of Serna's presence helped to prove Serna was present at the house when Christina left, thus disproving Serna's alibi.

Regardless, any error in admitting the testimony was harmless. Christina positively identified Serna as one of those at the house when she left shortly before Galante was attacked. Galante identified Serna as one of his attackers, and Christina's testimony about her fear for Galante's safety based on Serna's presence was very brief. It is not reasonably probable a result more favorable to Serna would have been achieved had the trial court excluded the challenged testimony. (*People v. Alcala* (1992) 4 Cal.4th 742, 790-791.)

## IV. Gallagher's Issue

The one issue raised by Gallagher, in which Serna joined, is that the trial court erred in denying a *Batson/Wheeler* challenge to the prosecution's exercise of a peremptory challenge.

### A. *Batson/Wheeler* Challenge

Gallagher and Serna claim the trial court violated their Fourteenth Amendment right to equal protection and their constitutional right to trial by a jury drawn from a representative cross-section of the community.

#### Factual background

Prior to and during voir dire, Prospective Juror A.B., who is African-American, indicated she was concerned her employer would hold jury service against her if she had to miss work; she had family members who had been treated unfairly by the criminal justice system and incarcerated; and she was a nurse employed at a local medical center, although she had also worked from time to time at Corcoran State Prison. A.B. did indicate she could be fair during the trial. A.B. had completed a jury questionnaire, and

34.

the prosecutor had asked her no questions. The prosecutor exercised a peremptory challenge and counsel for Serna objected.

Outside the presence of the prospective jurors, Serna's counsel noted that all four defendants were African-American and the jury panel had few African-Americans. Defense counsel maintained there was no rational basis to dismiss Prospective Juror A.B. She was a long-time resident of the county and had indicated she could be fair. Defense counsel also noted the prosecutor had not questioned A.B. before exercising a peremptory challenge. Serna's counsel objected to A.B.'s dismissal on *Batson/Wheeler* grounds; counsel for the other three defendants joined in the objection.

The trial court stated that it did not believe a prima facie case of group bias had been shown, but nevertheless asked the prosecution to explain the reason for exercising a peremptory challenge on Prospective Juror A.B. The prosecutor noted that another African-American was on the jury and the prosecutor did not plan to excuse that juror. The prosecutor explained that based upon A.B.'s responses to questions, she might have bitter feelings about being a juror because it might impact her job training and possible promotion; she had family members in prison who she felt had been treated unfairly; she occasionally worked for California's Department of Corrections and Rehabilitation (CDCR), and the prosecutor planned to excuse all CDCR officers; and A.B. showed a bit of "attitude" about children when she described her daughter as "a beautiful princess."

The trial court noted that Prospective Juror A.B.'s "demeanor and body language" when answering voir dire questions from the trial court displayed "hostility." A.B.'s answers also indicated that her family had negative experiences with law enforcement and the trial court's observation of her "facial expressions and mannerisms" indicated she had "attitude" and believed the "justice system is somewhat unfair." The trial court found the prosecutor had valid reasons for dismissing A.B. and denied the *Batson/Wheeler* motion.

**Analysis**

Federal law following *Batson* holds that exercising peremptory challenges solely on the basis of race offends the Fourteenth Amendment's guaranty of the equal protection of the laws (*U.S. v. Martinez-Salazar* (2000) 528 U.S. 304, 315), and *Wheeler* holds that such conduct violates a defendant's right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the state Constitution (*Wheeler, supra*, 22 Cal.3d at pp. 276-277).

Excluding even a single prospective juror for reasons impermissible under *Batson* and *Wheeler* requires reversal. (*People v. Silva* (2001) 25 Cal.4th 345, 386 (*Silva*).) And although a party may exercise a peremptory challenge for any permissible reason or no reason at all (*Purkett v. Elem* (1995) 514 U.S. 765, 768 (*Purkett*); *People v. Jones* (1998) 17 Cal.4th 279, 294), "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination" (*Purkett,* at p. 768).

In evaluating a trial court's *Batson/Wheeler* ruling that a party has offered a race-neutral basis for subjecting particular prospective jurors to peremptory challenge, we are mindful that "'If the trial court makes a "sincere and reasoned effort" to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.'" (*People v. Johnson* (2003) 30 Cal.4th 1302, 1319-1320; accord, *Silva, supra*, 25 Cal.4th at pp. 385-386.) In a case in which deference is due, "The trial court's ruling on this issue is reviewed for substantial evidence. [Citation.]" (*People v. McDermott* (2002) 28 Cal.4th 946, 971 (*McDermott*).)

On a *Batson/Wheeler* motion, "the issue is not whether there is a pattern of systematic exclusion; rather, the issue is whether a particular prospective juror has been challenged because of group bias. [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 549.) At trial, the court and counsel follow a three-step constitutional analysis of peremptory challenges. First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory

36.

purpose.  Second, if the defendant makes out a prima facie case, the burden shifts to the prosecution to give an adequate explanation of the peremptory challenges by offering permissible neutral justifications.  Third, if a neutral explanation is tendered, the trial court must decide whether the opponent of the peremptory challenges has proved purposeful discrimination.  (*Johnson v. California* (2005) 545 U.S. 162, 168.)

With reference to the first of those three steps, the defendant must show "that under the totality of the circumstances it is reasonable to infer discriminatory intent. [Citation.]" (*People v. Kelly* (2007) 42 Cal.4th 763, 779.)  Certain types of evidence may be especially relevant.  (*Id.* at p. 779.)  The party may show that his or her opponent either struck most or all of the members of the identified group from the venire or used a disproportionate number of his or her peremptory challenges against the group.  (*Ibid.*) The party may demonstrate that the prospective jurors in question share only one characteristic membership in the group and that in all other respects they are as heterogeneous as the community as a whole.  (*Ibid.*)  When appropriate, that showing may be supplemented by circumstances like the failure of the party's opponent to engage the prospective jurors at issue in more than desultory voir dire or to ask those prospective jurors any questions at all.  (*Ibid.*)  Finally, the defendant need not be a member of the group at issue, but if he or she is, especially if the victim is a member of the group to which a majority of the remaining jurors belong, those facts also are relevant.  (*Id.* at pp. 779-780.)

Here, the trial court did not find that a prima facie case of discrimination had been shown.  Regardless, the trial court asked the prosecutor for an explanation for the dismissal of Prospective Juror A.B.  Our duty after denial of a *Batson/Wheeler* motion without a finding of a prima facie case is to consider the entire voir dire record before us. (*People v. Howard* (1992) 1 Cal.4th 1132, 1155 (*Howard*).)

Since *Batson/Wheeler* motions call on a court's personal observations, we give considerable deference to the court's rulings.  (*Howard, supra,* 1 Cal.4th at p. 1155,

37.

citing *Batson, supra*, 476 U.S. at p. 88.) If the record suggests grounds on which the prosecutor reasonably might have challenged the prospective jurors at issue, our duty is to affirm. (*Howard,* at p. 1155.)

The prosecutor need only identify facially valid race-neutral reasons why the prospective jurors were excused. (*Purkett, supra,* 514 U.S. at p. 767; *Silva, supra,* 25 Cal.4th at p. 384.) The record reflects that the prosecutor articulated numerous, race-neutral reasons for dismissing Prospective Juror A.B., among them the potential hardship with her job, as well as family members in prison who A.B. believed had been treated unfairly by the criminal justice system. The trial court found the prosecutor had articulated valid race-neutral reasons for dismissing A.B. The trial court then articulated additional reasons of its own why it believed A.B. would not be a good juror, including hostility, attitude, and potential difficulty deliberating with others.

We review the trial court's ruling on purposeful racial discrimination for substantial evidence. (*McDermott, supra,* 28 Cal.4th at p. 971.) It is presumed that the prosecutor uses peremptory challenges in a constitutional manner. We defer to the trial court's ability to distinguish "bona fide reasons from sham excuses. [Citation.]" (*People v. Burgener* (2003) 29 Cal.4th 833, 864.) As long as the trial court makes "a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal. [Citation.]" (*Ibid*.)

The trial court found the prosecutor had race-neutral reasons for dismissing Prospective Juror A.B. as a juror and we conclude substantial record evidence supports the trial court's ruling. Hence, we will not reverse the trial court's denial of the *Batson/Wheeler* motion.

**DISPOSITION**

The convictions and true findings are affirmed as to all four appellants. The cases of all four appellants are remanded for resentencing for the trial court to either impose or strike the gang enhancement appended to the subordinate counts.

_____

CORNELL, Acting P.J.

WE CONCUR:


_____

POOCHIGIAN, J.


_____

FRANSON, J.