[No. C052287. Third Dist. Oct. 10, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN DUNKERSON, Defendant and Appellant.

**COUNSEL**

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NICHOLSON, J.**—A jury convicted defendant, Kevin Dunkerson, of assault with force likely to produce great bodily injury, with an enhancement for personally inflicting great bodily injury. Defendant contends the trial court erred when, using Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 3160, it gave a "group beating" instruction that improperly allowed the jury to find he personally inflicted great bodily injury even though others in the group may have caused the injury.

We affirm because, subsequent to the filing of this appeal, the Supreme Court rejected defendant's argument in a case involving CALJIC No. 17.20, which is not materially different from CALCRIM No. 3160 with respect to the issue raised by defendant. The Supreme Court held that the group beating instruction, as it relates to whether a defendant personally inflicted great bodily injury in a group attack, is proper when the defendant personally uses force against the victim and the precise injurious effect of the defendant's actions is unclear. (*People v. Modiri* (2006) 39 Cal.4th 481, 495–497 [46 Cal.Rptr.3d 762, 139 P.3d 136] (*Modiri*).)

## PROCEDURE

Defendant was charged with one count of battery causing serious bodily injury (Pen. Code, § 243, subd. (d))[1] and one count of assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)). As to the second count, the district attorney alleged that defendant personally inflicted great bodily injury on the victim, and was therefore subject to enhanced sentencing under section 12022.7, subdivision (a), which provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

The trial court provided the jury with the following group beating instruction: "If you conclude that more than one person assaulted Mark Freer and you cannot decide which person caused which injury, you may, but are not required to, conclude that the defendant personally inflicted great bodily injury on Mark Freer if the People have proved that: [¶] 1. Two or more persons, acting at the same time, assaulted Mark Freer and inflicted great bodily injury on him; [¶] 2. The defendant personally used physical force on Mark Freer during the group assault; [¶] AND [¶] 3. The amount or type of physical force the defendant used on Mark Freer was enough that it alone could have caused Mark Freer to suffer great bodily injury." (See CALCRIM No. 3160.)

The jury convicted defendant as charged. The court granted defendant five years' probation, with a condition that he serve 270 days in county jail.

## STATEMENT OF FACTS

Christy Adams was incarcerated in county jail after an altercation with her fiancé, Moses Smith. She and Smith lived together in an apartment. While in jail, Adams called her mother, Johnnie Ransaw, and asked her to change the locks on Adams's apartment so that nothing would be stolen.

Ransaw went to Adams's apartment building with her boyfriend, Mark Freer, in Freer's Chevrolet Silverado pickup truck. When they entered the apartment, Smith and defendant were seated on the couch. Ransaw told Smith that she and Freer were going to change the locks. She explained that they were going to go get new locks and return. Smith indicated that he had no objection.

Ransaw and Freer drove to Home Depot and returned with new locks. Smith was still in the apartment, but defendant was not. Ransaw and Freer

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

were unwrapping the new locks when they heard someone puncturing the tires on Freer's truck. Freer did not see anyone and did not feel it was safe to go downstairs for fear he was being "set up." He continued to work on the locks.

While Freer was working on the locks, Audrey Smith, who is Moses Smith's sister and defendant's mother, ran up the stairs to the apartment, accompanied by three other women. Audrey, a very large woman, grabbed Freer by his right shoulder. Freer, who is about five feet 10 inches tall and weighs 170 pounds told Audrey to let go of him. She did not, and Freer, who had previously dislocated his shoulder, could not break free from Audrey.

Although Freer later claimed he did not do anything to her, Audrey screamed that Freer hit her and yelled for someone to go get her son. Within minutes, defendant came running up the stairs with three other men, all of whom appeared to be in their 20's. Audrey said, "He hit me." Defendant immediately began hitting Freer. The other three men joined the attack. Freer fell to the ground where he was repeatedly hit and kicked in the stomach, ribs, and head, by defendant and the three other men.

The four men dragged Freer inside the apartment. At defendant's command, the men propped Freer against the couch. Defendant ripped off Freer's jacket and the group punched and kicked Freer repeatedly in the ribs and head. While beating Freer, defendant said, "You don't hit my mother."

When Ransaw contacted the police, the three other men ran out of the apartment, but defendant stayed and kicked Freer in the head another eight or 10 times before leaving. During the beating, Freer saw that one of the attackers had tattoos like the ones Freer had seen on defendant when he encountered him in the apartment before going to buy the locks. It seemed to Freer that most of the blows were coming from defendant. During the attack, he was in and out of consciousness.

When police arrived, they noticed blood in the front entrance of the apartment. Freer was seated on a couch moaning. He was taken to the hospital, where he received stitches at three different locations on his head. He stayed at the hospital for three days. Freer subsequently returned to the hospital because of severe pain in his ribs, head, and shoulders. He was given morphine and released the same day. For two and a half months Freer could barely lift his arms, and he was unable to breathe deeply, cough, or laugh without pain in his ribs.

Defendant provided a different version of the facts. He testified that he was at home when he heard that Adams's "step-dad" had pushed his mother.

When he went to Adams's apartment, his mother was at the bottom of the stairs with a crowd of about seven men, three women, and some children. They were talking about Freer pushing his mother.

Defendant went upstairs with his mother and his mother said to Freer, "This is my son. Push him like you pushed me." Defendant walked over to Freer and punched him once in the jaw, causing Freer to fall on the couch. Defendant then grabbed Freer by the front of his shirt and dragged him toward the front door in order to make him leave. He was attempting to drag Freer out of the apartment when seven or eight people pushed defendant out of the way, rushed in, and began punching and kicking Freer.

Defendant did not know any of the people who rushed in and did not know they would attack Freer. He wanted no part of the attack, so he left. At trial he insisted that he hit Freer only once.

## DISCUSSION

Defendant argues that the trial court erred in giving the group beating instruction (CALCRIM No. 3160) because it allowed the jury to find that he personally inflicted great bodily injury even though he may only have aided in the attack, but did not actually inflict any great bodily injury himself. He claims that the error deprived him of his constitutional rights to due process and trial by jury. Defendant's contention is without merit.

As defendant noted in his opening brief, a group beating instructional issue was, at that time, being reviewed by the California Supreme Court in *Modiri*. The Supreme Court has since decided *Modiri, supra*, 39 Cal.4th 481.

The issue presented in *Modiri* was whether the group beating instruction in CALJIC No. 17.20 satisfied the personal infliction requirement in section 1192.7, subdivision (c)(8).[2] The relevant part of CALJIC No. 17.20 given at that defendant's trial is as follows: " 'When a person participates in a group beating and it is not possible to determine which assailant inflicted a particular injury, he or she may be found to have personally inflicted great bodily injury upon the victim if . . . the application of unlawful physical force upon the victim was of such a nature that, by itself, it could have caused the

---

[2] Although the issue in *Modiri* involved personally inflicting great bodily injury under section 1192.7, subdivision (c)(8), the court in *Modiri* applied its holding equally to the personal infliction requirement under section 12022.7. (*Modiri, supra*, 39 Cal.4th at pp. 495–496 ["participation in a group attack may satisfy sections 1192.7[, subd.] (c)(8) and 12022.7[, subd.] (a) where the defendant personally uses force against the victim, and the precise injurious effect is unclear"].)

great bodily injury suffered by the victim . . . .' " (*Modiri, supra*, 39 Cal.4th at p. 490, fn. 6, italics omitted; see CALJIC No. 17.20.)

Identical to defendant's argument in this case, the defendant in *Modiri* argued that the group beating instruction erroneously allowed the jury to substitute the harm inflicted by others for the harm that he caused. (*Modiri, supra*, 39 Cal.4th at p. 492.) The instruction primarily did so, the *Modiri* defendant argued, by not requiring the jury to find that he produced a particular serious injury or injury-causing blow. (*Ibid.*)

The court in *Modiri* disagreed with the defendant and found that the group beating instruction properly permitted the jury to find the defendant personally inflicted great bodily injury on the victim. (*Modiri, supra*, 39 Cal.4th at pp. 495–497.) It noted that "[f]or 20 years, courts have upheld personal-infliction findings where the defendant physically joins a group attack, and directly applies force to the victim sufficient to inflict . . . great bodily harm." (*Id.* at p. 486.)

CALJIC No. 17.20, given in *Modiri*, and CALCRIM No. 3160, given in this case, each provide the jury with the same guidance, allowing the jury to find that the defendant personally inflicted great bodily injury during a group assault where it is impossible to determine which person caused which injury to the victim. Therefore, the Supreme Court's analysis in *Modiri* also applies here.

 Even though it might be difficult to link Freer's specific injuries to specific blows by defendant, the evidence showed that defendant personally applied physical force to Freer several times. When Audrey told defendant that Freer hit her, defendant was the first to attack Freer. During the melee of blows to his head and ribs, it seemed to Freer that most of the force was coming from defendant. It was defendant who commanded that the group put Freer against the couch. And it was defendant who stayed an extra few seconds after the rest of the group left to deliver eight to 10 more kicks to Freer's head.

Because the jury instruction was properly given and correctly stated the law on personal infliction of great bodily injury in a group attack setting, it did not violate defendant's rights to due process and trial by jury. (*Modiri, supra*, 39 Cal.4th at pp. 495–497.)

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 2008, S158134. Werdegar, J., did not participate therein.