Filed 3/24/14  P. v. Seledee CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KEVIN C. SELEDEE,<br><br>Defendant and Appellant. | F065263<br><br>(Super. Ct. No. 10CM8628)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Timothy S. Buckley* and Thomas DeSantos, Judges.◊

Schweitzer & Davidian and Eric H. Schweitzer for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Charity S. Whitney for Plaintiff and Respondent.

-ooOoo-

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

◊ Judge Buckley presided over the trial; Judge DeSantos presided over the new trial motion and sentencing.

1.

Inmate Kevin C. Seledee and another inmate attacked fellow inmate Kevin Morris in a recreational yard at Avenal State Prison. A jury found Seledee guilty of one count of assault by a prisoner by means of force likely to produce great bodily injury (Pen. Code, § 4501)[1] and found true an allegation that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a).) Seledee admitted during trial that he had suffered a prior serious or violent felony conviction (§§ 667, subds. (c)-(j) and 1170.12, subds. (a)-(e).) The trial court denied Seledee's motion for a new trial and sentenced him to a total prison term of seven years, comprised of double the two-year mitigated term plus three years for the enhancement.

On appeal, Seledee contends the jury's finding that he personally inflicted great bodily injury must be reversed because the trial court erred in instructing the jury with the group beating instruction in CALCRIM No. 3160 and the evidence is insufficient to support the finding. He also contends the trial court erred when it decided not to instruct the jury on simply assault. We affirm.

## FACTS

On the afternoon of February 15, 2010, Correctional Officer Martha Arreola was walking across the recreation yard at Avenal State Prison when the estimated 200 inmates on the yard became silent. Arreola noticed that some inmates turned to look in one direction. When she looked in the same direction, Arreola saw two inmates wearing white t-shirts standing next to each other with their backs toward her throwing punches toward someone or something in front of them. Arreola could not see what they were punching.

Arreola commanded the inmates in her immediate area to get down. Once they did so, she could see a third inmate, later identified as Kerry Morris, lying on his back on the blacktop. The other two inmates both were punching and kicking Morris's upper

---

[1] Undesignated statutory references are to the Penal Code.

torso and face as he lay there. Morris's body jerked with each kick; he did not try to hit or kick his attackers. Arreola saw the assailants punch Morris five to six times and kick him about three times.

Arreola immediately began to walk towards the fight and radioed in a "Code 1" to the prison, which indicated there was an incident requiring multiple officers' attention. Never taking her eyes off the two assailants, Arreola saw them stop the attack and walk away in opposite directions as an announcement on the PA system ordered everyone down. While Arreola lost sight of one of the inmates, she never lost sight of the other inmate, who eventually sat down on the ground next to some restrooms. Arreola confirmed at trial the inmate was Seledee and that he was one of the inmates she saw standing over Morris swinging his fists and feet.

Additional officers came to the yard in response to the Code 1. When Correctional Sergeant Matheny arrived on the scene, he saw Morris sitting along the wall, bleeding from his face. Matheny requested medical attention for him. Matheny instructed another officer to cuff Seledee and told other responding staff to search the remainder of the yard for the other suspect. While a search ensued, the other suspect was never found.

As a result of the fight, Morris sustained a fractured and partially dislocated right jaw, two broken ribs on his left side and a bruised lung under the broken ribs, which can be caused by blunt trauma to the chest wall. Morris could not swallow or chew. He had abrasions, bruising and swelling on his nose, both eyes, and forehead. Morris was transported to the hospital by ambulance, where he received medical treatment for his injuries. Morris also had abrasions or scratches on his hands – both on the outside, including the upper fingers and knuckle area, and on the palms.

Seledee had blood on his shoes, blue jeans and white t-shirt, and his knuckles were cut and bleeding. He also had a swollen mouth, a reddened area on his chest, scratches on his arms and knees, and a bruise under his left eye. Seledee's injuries were not severe

3.

enough to require further treatment. The injuries to his knuckles were consistent with punching another person. Seledee was wearing two t-shirts that day. This tactic often was employed by inmates planning to assault someone – the inmate avoids being identified by disposing of the top shirt if it becomes soiled during the altercation.

*Defense*

Collin O'Brien, an inmate at Corcoran State Prison, testified for the defense. On February 15, 2010, he was an inmate at Avenal State Prison. O'Brien testified that he saw Morris strike Seledee on the left side of his face while the two were standing face to face. When they "started to quarrel or fight," O'Brien turned and walked away. When he looked back awhile later, Seledee was gone. O'Brien saw two other inmates approach Morris and saw one of them kick him while he was on the ground. After this, the yard was "put down." He saw Arreola run across the yard from the direction of one of the buildings after the PA announcement was made. More officers came and restrained Seledee. The fight between Morris and Seledee was mutual. O'Brien did not see how Morris ended up on the ground.

## DISCUSSION

### I.     Great Bodily Injury Enhancement

Seledee raises two challenges to the great bodily injury enhancement. First, he claims the trial court erred in giving the group beating instruction in CALCRIM No. 3160 because it is an incorrect statement of the law and requires the jury to make an impermissible presumption or inference. Next, based on his contention that the law requires that the jury find he caused a particular injury or wielded a particular injury-producing blow, he argues there is no substantial evidence to support a finding that he personally and intentionally inflicted great bodily injury on Morris.

4.

## A. CALCRIM No. 3160

The jury was instructed with CALCRIM No. 3160 as follows: "If you find the defendant guilty of the crime charged in Count 1, you must then decide whether for each crime the People have proved the additional allegation that the defendant personally inflicted great bodily injury on Kerry Morris in the commission or attempted commission of that crime. You must decide whether the People have proved this allegation for each crime and return a separate verdict for each crime. In this case, we only have one count, so it's not in the plural, it's in the singular.

"Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. If you conclude that more than one person assaulted Kerry Morris and you cannot decide which person caused such injury, you may conclude that the defendant personally inflicted great bodily injury on Kerry Morris if the People have proved that:

"One, two or more people acting at the same time assaulted Kerry Morris and inflicted great bodily injury on him.

"Two, the defendant personally used physical force on Kerry Morris during the group assault.

"And, three, the physical force that the defendant used on Kerry Morris was sufficient in combination with the force used by the others to cause Kerry Morris to suffer great bodily injury.

"The defendant must have applied substantial force to Kerry Morris. If that force could not have caused or contributed to the great bodily injury, th[e]n[] it was not substantial. [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

The jury sent three requests to the court during deliberations. As pertinent here, the second request asked: "Because only one attacker is identified, can we assume all

bodily injury was caused by the one attacker." With the consent of both prosecution and defense counsel, the court referred the jurors back to all of the instructions, "[b]ut, in particular, responsive generally to the question you've asked is 3160, defining great bodily injury."

After returning to continue deliberations, the jury sent a third request, which asked: "3160 lines 21-23 it says may conclude, can you clarify as to whether or not that means I have to or I have the opportunity to say he did not?" When discussing this request with counsel outside the jury's presence, the court stated it had no idea what the jury was asking – while it understood the jury was asking what "may conclude" means, it did not understand the second part of the question. Defense counsel thought the instruction was self-explanatory, as the use of "may conclude" meant that "it may conclude one way or the other" depending on how the jury found the evidence. The court proposed referring the jurors back to the instructions. Defense counsel agreed. After the jurors were brought in, the court told them it really could not clarify the instruction, it felt the instruction was self-explanatory, and while it thought it knew what the jury was asking, "I'll simply refer you back to all of the instructions, including 3160. I cannot clarify, at least as it's expressed."

The jurors continued deliberating. About 10 minutes later, the jury reached a verdict. After reviewing the verdict forms, the court sent the jury back because they had "not made a finding[,]" and told them they needed to make a finding "on this form." The jury returned a few minutes later with the verdict forms finding Seledee guilty on count 1 and the great bodily injury enhancement true.

Seledee argues the trial court erred in giving the group beating instruction contained in CALCRIM No. 3160 because it allowed the jury to find he personally inflicted great bodily injury even though the jury could not determine who inflicted the injury. He asserts the instruction allows a personal infliction finding where "the defendant's force *might* have contributed to great bodily injury." He further asserts the

6.

instruction contains either an impermissible mandatory presumption or an improper permissive inference. On these bases, he claims the instruction lowered the prosecution's burden of proof and deprived him of his federal constitutional rights. We disagree.

Section 12022.7, subdivision (a) provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Our Supreme Court has held the term "'*personally* inflicts'" in section 12022.7 applies to those who directly perform the act that causes the physical injury to the victim. (*People v. Cole* (1982) 31 Cal.3d 568, 579 (*Cole*).) The enhancement does not apply to those who assist someone else in producing injury, and who do not personally and directly inflict it themselves, such as by blocking the victim's escape or directing the attack. (*Cole*, *supra*, 31 Cal.3d at pp. 570-571.)

In *People v. Modiri* (2006) 39 Cal.4th 481 (*Modiri*), our Supreme Court addressed whether the group beating instruction in CALJIC No. 17.20, the predecessor to CALCRIM No. 3160, satisfied the personal infliction requirement in section 1192.7, subdivision (c)(8).[2] The relevant part of CALJIC No. 17.20 given at that defendant's trial read as follows: "'When a person participates in a group beating and it is not possible to determine which assailant inflicted a particular injury, he or she may be found to have personally inflicted great bodily injury upon the victim if (1) the application of unlawful physical force upon the victim was of such a nature that, by itself, it could have caused the great bodily injury suffered by the victim; or (2) that at the time the defendant

---

[2] Section 1192.7, subdivision (c) provides, in part: "As used in this section, 'serious felony' means any of the following: [¶] . . . (8) any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm; . . . " This statute defines the term "serious felony" for purposes of application of the habitual criminal statute (§ 667, subd. (a)), which imposes a five-year consecutive term, and the three strikes law (§ 667, subd. (e)). (*Modiri*, *supra*, 39 Cal.4th at p. 492.)

personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew, or reasonably should have known, that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim. . . . '" (*Modiri*, *supra*, 39 Cal.4th at p. 490, fn. 6, italics omitted; CALJIC No. 17.20.)

The defendant in *Modiri* argued the group beating instruction omitted the statutory requirement that he personally inflict great bodily injury and erroneously allowed the jury to substitute the harm inflicted by others for the harm he must have caused. (*Modiri, supra*, 39 Cal.4th at p. 492.) He asserted the instruction primarily did so by not requiring the jury to find he produced a particular grievous injury, or wielded a particular injury-causing weapon or blow. (*Ibid.*)

The Court disagreed, noting that nothing in section 1192.7, subdivision (c)(8) implies that the defendant must act alone in causing the victim's injuries; instead, the statute "calls for the defendant to administer a blow or other force to the victim, for the defendant to do so directly rather than through an intermediary, and for the victim to suffer great bodily injury as a result." (*Modiri*, *supra*, 39 Cal.4th at p. 493.) The Court concluded CALIC No. 17.20 reasonably conveys those statutory principles, as it first requires jurors to determine the defendant's guilt of the charged crime and it applies only if the jurors decide the defendant "'participate[d]' in a group beating, and that 'it is not possible' to determine which assailant inflicted a particular injury." (*Modiri*, *supra*, 39 Cal.4th at pp. 493-494.) In that situation, a personal-infliction finding is permissible only if the defendant personally applied "'unlawful physical force' to the victim[,] and [the instruction] makes clear that the physical force personally applied by the defendant must have been sufficient to produce great bodily injury either (1) by itself, or (2) in combination with other assailants. Both group beating theories exclude persons who

merely assist someone else in producing injury, and who do not personally and directly inflict it themselves." (*Modiri*, *supra*, 39 Cal.4th at p. 494.)

The Court emphasized the instruction "contemplates acts that contribute substantially to the victim's injured state[,]" and the instruction's "group beating theories preclude a section 1192.7[, subd.] (c)(8) finding where the defendant's conduct 'could [not] have,' or 'would [not have],' caused or contributed to the requisite harm." (*Modiri*, *supra*, 39 Cal.4th at p. 494.) The Court explained that "[i]n light of these qualifications, the defendant's role in both the physical attack and the infliction of great bodily injury cannot be minor, trivial, or insubstantial[,]" and the instruction does not conflict with the statutory language in the manner the defendant suggested. (*Ibid.*)

The Court rejected the defendant's argument that its prior decision in *Cole* required a different result, as "*Cole* stands for the modest proposition that a defendant personally inflicts great bodily harm only if there is a direct physical link between his own act and the victim's injury." (*Modiri*, *supra*, 39 Cal.4th at pp. 494-495.) The Court determined CALJIC No. 17.20 followed the rule of *Cole* that a person "who does not strike or otherwise personally use force upon the victim does not qualify for enhanced punishment where the personal infliction of harm is required." (*Modiri*, *supra*, 39 Cal.4th at p. 495.) The Court further explained that, consistent with the Court's view of the relevant statutory language, appellate court decisions had "provided for 20 years that participation in a group attack may satisfy sections 1192.7[, subd.] (c)(8) and 12022.7[, subd.] (a) where the defendant personally uses force against the victim, and the precise injurious effect is unclear." (*Modiri*, *supra*, 39 Cal.4th at pp. 495-496.)

The Court noted that two themes emerge from those decisions. First are cases in which courts "upheld personal-infliction findings where the force personally used by the defendant during a group attack was serious enough that it may, *by itself*, have caused great bodily injury, even though the evidence did not show for certain that the defendant's acts alone perpetrated specific harm or that nobody else injured the victim."

9.

(*Modiri*, *supra*, 39 Cal.4th at p. 496.) One example is *People v. Corona* (1989) 213 Cal.App.3d 589, 591-592, 594-595 (*Corona*), where the defendant joined other men in hitting and kicking the victim, threw unopened beer cans at the victim and the victim suffered cuts and bruises on the face and body. (*Modiri*, *supra*, 39 Cal.4th at p. 496.) The other group beating cases permit a personal-infliction finding "where the physical force the defendant and other persons applied to the victim at the same time *combined* to cause great bodily harm[,] such as *People v. Dominick* (1986) 182 Cal.App.3d 1174, 1185, 1210-1211, where the defendant grabbed the rape victim's arms and pulled her head back to allow his accomplice to strike her throat with a pole, which led to the victim falling down a mountainside and breaking her shoulder. (*Modiri*, *supra*, 39 Cal.4th at p. 496.)

The Court found that "[b]oth lines of authority show that CALJIC No. 17.20 – far from offending sections 1192.7[, subd.] (c)(8) and 12022.7[, subd.] (a) – prevents them from being rendered meaningless where more than one person perpetrates an attack. In such cases, the evidence is often conflicting or unclear as to which assailant caused particular injuries in whole or part. Thus, as CALJIC No. 17.20 recognizes, those who participate directly and substantially in a group beating should not be immune from a personal-infliction finding for the sole reason that the resulting confusion prevents a showing or determination of this kind." (*Modiri, supra*, 39 Cal.4th at pp. 496-497.) The Court also concluded that the history of section 1192.7, subdivision (c)(8) confirmed that it embraced the group beating scenarios described in the appellate decisions and CALJIC No. 17.20. (*Modiri*, *supra*, 39 Cal.4th at pp. 497-499.)

Not long after *Modiri* was decided, the Third District Court of Appeal relied on it to reject a defendant's argument that the group beating instruction in CALCRIM No. 3160 improperly allowed the jury to find that he personally inflicted great bodily injury under section 12022.7, subdivision (a), even though others in the group may have caused the injury. (*People v. Dunkerson* (2007) 155 Cal.App.4th 1413, 1414-1415

10.

(*Dunkerson*).) The court recognized that while *Modiri* involved personal infliction of great bodily injury under section 1192.7, subdivision (c)(8), the Supreme Court "applied its holding equally to the personal infliction requirement under section 12022.7." (*Dunkerson*, *supra*, 155 Cal.App.4th at p. 1417, fn. 2.)

The court observed that CALJIC No. 17.20 in *Modiri* and CALCRIM No. 3160[3] "each provide the jury with the same guidance, allowing the jury to find that the defendant personally inflicted great bodily injury during a group assault where it is impossible to determine which person caused which injury to the victim." (*Dunkerson*, *supra*, 155 Cal.App.4th at p. 1418.) Accordingly, the court found the Supreme Court's analysis in *Modiri* applied to its case and, "[b]ecause the jury instruction was properly given and correctly stated the law on personal infliction of great bodily injury in a group attack setting, it did not violate defendant's rights to due process and trial by jury." (*Dunkerson*, *supra*, 155 Cal.App.4th at p. 1418.)

We agree with *Dunkerson* and conclude that the Supreme Court's holding in *Modiri* applies to the CALCRIM No. 3160 instruction given here, as both this instruction and CALJIC No. 17.20 provide the jury with the same guidance. While Seledee argues a group beating theory should not be recognized as satisfying the personal infliction element of section 12022.7, subdivision (a), the Supreme Court in *Modiri* specifically held that to find a defendant personally inflicted great bodily harm, the defendant need

---

[3] In *Dunkerson*, the jury was instructed with CALCRIM No. 3160 as follows: "'If you conclude that more than one person assaulted [the victim] and you cannot decide which person caused which injury, you may, but are not required to, conclude that the defendant personally inflicted great bodily injury on [the victim] if the People have proved that: [¶] 1. Two or more persons, acting at the same time, assaulted [the victim] and inflicted great bodily injury on him; [¶] 2. The defendant personally used physical force on [the victim] during the group assault; [¶] AND [¶] 3. The amount or type of physical force the defendant used on [the victim] was enough that it alone would have caused [the victim] to suffer great bodily injury.'" (*Dunkerson*, *supra*, 155 Cal.App.4th at p. 1415.)

not be the sole or definite cause of a specific injury; instead, the defendant may be found to have personally inflicted great bodily harm "where the defendant physically joins a group attack, and directly applies force to the victim sufficient to inflict, or contribute to the infliction of, great bodily harm." (*Modiri*, *supra*, 39 Cal.4th at p. 486.) As an appellate court, we are bound by this decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)[4]

Seledee argues CALCRIM No. 3160 is constitutionally deficient because it creates either a mandatory presumption or an improper permissive inference. The use of presumptions is permitted in criminal trials. (*Ulster County v. Allen* (1979) 442 U.S. 140, 156 (presumptions are "a staple of our adversary system of factfinding.") The "ultimate test" of constitutional validity is whether the presumption "undermine[s] the factfinder's responsibility at trial . . . to find the ultimate facts beyond a reasonable doubt." (*Ibid.*, citing *In re Winship* (1970) 397 U.S. 358, 364; *Mullaney v. Wilbur* (1975) 421 U.S. 684, 702-703, fn. 31.) "[M]andatory presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of the offense. [Citations.] By contrast, a permissive inference is *not a violation of due process* because the State still has the burden of persuading the jury that the suggested conclusion should be inferred based on the predicate facts proved." (*Estelle v. McGuire* (1991) 502 U.S. 62, 78-79, italics added.) "A permissive inference violates the Due Process Clause only if the

---

[4] Seledee also tries to distinguish *Modiri*, *supra*, 39 Cal.4th 481, and asserts *Corona*, *supra*, 213 Cal.App.3d 589, no longer complies with federal constitutional law, by pointing out that those cases either did not consider the application of *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), or were decided before it. He fails to explain, however, how *Apprendi* would change the analysis in either case, except to cite the holding in *Apprendi* that any fact, other than the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) Neither *Modiri* nor *Corona*, however, removes a fact from the jury's consideration or, as we shall explain, lowers the burden of proof.

suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." (*Francis v. Franklin* (1985) 471 U.S. 307, 314-315.) "The due process clauses of the federal Constitution (U.S. Const., 5th & 14th Amends.) require a relationship between the permissively inferred fact and the proven fact on which it depends." (*People v. Mendoza* (2000) 24 Cal.4th 130, 180.)

Seledee contends CALCRIM No. 3160 created an unconstitutional "permissive inference" because it allowed the jury to infer he personally inflicted great bodily harm from the three findings listed therein, namely (1) that "[t]wo or more people, acting at the same time, assaulted [the victim] and inflicted great bodily injury on him"; (2) "[t]he defendant personally used physical force on [the victim] during the group assault"; and (3) "[t]he physical force that the defendant used on [the victim] was sufficient in combination with the force used by the others to cause [the victim] to suffer great bodily injury." He asserts these three findings "do not make it beyond a reasonable doubt that the inferred fact[,]" i.e. that he personally inflicted great bodily injury, "is true."

But that is precisely what these three findings do show. If the jury finds that two or more people assaulted the victim and inflicted great bodily injury, and the defendant used physical force on the victim during the assault which, in combination with the force used by others, caused the victim to suffer great bodily injury, then the jury may find the defendant personally inflicted great bodily injury. This is consistent with *Modiri*, which approved the then 20 years of case law which "upheld personal-infliction findings where the defendant physically joins a group attack, and directly applies force to the victim sufficient to inflict, or contribute to the infliction of, great bodily harm." (*Modiri*, *supra*, 39 Cal.4th at p. 486.)

Seledee contends the instruction was erroneous because it did not tell the jury it could consider other facts before finding him guilty. In support, he relies on *United States v. Martinez* (1975) 514 F.2d 334, 341 (*Martinez*), where the Ninth Circuit Court of Appeals held that, under the facts of that case, an instruction which stated "that when

one drives a car laden with contraband, there is a substantial basis from which the trier of fact,. . . may infer that the driver has knowing possession of the contraband," was improper because it did not tell the jury that fact, standing alone, was insufficient to support an inference of knowledge. Seledee, however, does not point to what other facts would be relevant to a determination of whether he personally inflicted great bodily injury that are not covered by the instruction. Instead, the instruction required the jury to find sufficient facts to warrant an inference that Seledee personally inflicted great bodily injury.

Although Seledee recognizes that CALCRIM No. 3160 states that the jury "may conclude" he personally inflicted great bodily injury if the People proved the three elements, he asserts the jury could have regarded the instruction as containing a mandatory presumption since when it asked the court to clarify whether "may conclude" meant "I have to or I have the opportunity to say he did not?," the court simply referred the jury back to the instruction. In support, he relies on *Sandstrom v. Montana* (1979) 442 U.S. 510, 524 [holding reasonable juror could have interpreted instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts[,]" as conclusive or persuasion-shifting] and *Martinez*, *supra*, 514 F.2d at p. 342. The instruction, however, is not cast in the language of a command. Instead, the language "may conclude" suggests a permissive inference. Although the jurors questioned whether the instruction meant what it said, the court essentially told the jury it did when it referred the jury back to the instruction. We do not accept the argument that a reasonable juror would have viewed this language as mandatory.

In sum, CALCRIM No. 3160 was properly given and correctly stated the law on personal infliction of great bodily injury in a group beating situation. Accordingly, the trial court did not err in giving the instruction and we reject Seledee's argument to the contrary.

14.

### B. Sufficiency of the Evidence

Seledee also contends there was insufficient evidence to support the jury's finding that he personally inflicted great bodily injury on Morris. Seledee's argument is based on his position that the prosecution was required to prove he caused a particular injury or wielded a particular injury-producing blow. But as we have explained, the jury could make a personal-infliction finding where Seledee, in a group attack, personally used force against the victim where the precise injurious effect is unclear. (*Modiri*, *supra*, 39 Cal.4th at pp. 495-496.) Such a finding could be made if Seledee personally applied force to Morris, and such force was sufficient to produce grievous bodily harm in concert with the other assailant. (*Modiri*, *supra*, 39 Cal.4th at p. 497.)

The evidence is sufficient to sustain such a finding here, as it showed that Seledee and another inmate punched and kicked Morris repeatedly on his upper torso and face, the injuries on Seledee's injured and bloody knuckles were consistent with having punched someone, Seledee had blood on his clothing and shoes, and Morris sustained a fractured and partially dislocated jaw, broken ribs and a bruised lung. Seledee does not contend the evidence is insufficient under this theory. Accordingly, we reject his contention.

### II.    Omission of Instruction on Simple Assault

Seledee argues the omission of a sua sponte instruction on simple assault requires reversal of his assault conviction. The Attorney General argues that the court had no sua sponte duty to so instruct and that error, if any, was harmless.

During the jury instruction conference, the trial court discussed with counsel whether to give an instruction on simple assault. The court noted there was testimony to show, from the People's point of view, that what occurred could only reasonably be construed as a section "4501," and from the defense point of view, that Seledee did not commit the assault because it was self-defense. The court explained that under either scenario, the lesser included offense of simple assault did not seem to "even play into

15.

being appropriate." Both counsel agreed with this assessment. The court further explained that even though assault was a lesser included offense of section 4501, based on the way the evidence was presented, there was no rational way the jury could come back with a conviction of simple assault based on what the defense said occurred because Seledee was the one first attacked and there was insufficient evidence he was assaultive other than defending himself. Defense counsel agreed. The court decided that a simple assault instruction should not be given.

Based on O'Brien's testimony that he saw Seledee and Morris "throwing punches and hitting each other[,]" and later saw two other inmates approach Morris, one of whom kicked him while he was on the ground, Seledee contends the jury might have found he committed an assault but did not use force likely to cause great bodily injury. As a consequence, he contends, the trial court erred in failing to instruct the jury on simple assault as a lesser included offense. We are not persuaded.

A trial court has a sua sponte duty to instruct on all theories of a lesser included offense which find substantial support in the evidence. (*People v. Lewis* (2001) 25 Cal.4th 610, 645.) In this context, substantial evidence is evidence from which a reasonable jury could conclude that only the lesser offense had been committed. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) "A criminal defendant is entitled to an instruction on a lesser included offense only if [citation] 'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*." (*People v. Memro* (1995) 11 Cal.4th 786, 871, overruled on other grounds in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2, quoting *People v. Morrison* (1964) 228 Cal.App.2d 707, 712.)

Simple assault (§ 240) is a lesser included offense of assault by a prisoner by means of force likely to cause great bodily injury (§ 4501). (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747 (*McDaniel*).) The two offenses are distinguished by the degree of force used in their commission. An assault is "an unlawful attempt, coupled with a

16.

present ability, to commit a violent injury on the person of another." (§ 240; see also *People v. Williams* (2001) 26 Cal.4th 779, 784.) A violation of section 4501, by contrast, requires an assault committed by means of force likely to produce great bodily injury, which focuses on whether the force the defendant actually exerted was likely to produce great bodily injury. (*McDaniel*, *supra*, 159 Cal.App.4th at p. 748.) Such force can be found where the attack was made by hands or fists; "[w]hether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*Id.* at pp. 748-749.)

Accordingly, the trial court had a duty to instruct the jury on simple assault if there was substantial evidence the force Seledee used was not likely to produce great bodily injury. O'Brien testified that Morris and Seledee were throwing punches at each other. He did not describe the force of those punches. There is no evidence from which a jury could conclude the force Seledee used was trivial or insignificant. Instead, the evidence showed that after the fight, Seledee's knuckles were cut and bleeding, and he had blood on his shoes, jeans and shirt. The injuries to his knuckles were consistent with punching another person. Morris suffered injuries to his face, including a fractured and partially dislocated jaw, and to his chest, including two broken ribs and a bruised lung, any of which were significant injuries. While Seledee contends the jury could have concluded that Morris's more severe injuries were inflicted by the other two inmates, O'Brien testified he saw one of those inmates kick Morris only once. A single kick could not have inflicted both the injuries to Morris's face and his chest. Even if the jury accepted O'Brien's testimony, Seledee would still be responsible for inflicting the injuries to either Morris's face or his chest. If Seledee did not act in self defense, then the evidence showed no less than an assault by force likely to produce great bodily injury. Therefore, the trial court did not err in failing to instruct the jury on simple assault.

17.

**<u>DISPOSITION</u>**

The judgment is affirmed.

_____

Gomes, Acting P.J.

WE CONCUR:


_____

Poochigian, J.


_____

Franson, J.

18.