Filed 7/19/16  P. v. O'Brien CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076089 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F02885) |
| v. | |
| MICHAEL MARTIN O'BRIEN, | |
| Defendant and Appellant. | |

Defendant Michael Martin O'Brien was convicted of assault by means of force likely to produce great bodily injury and battery resulting in serious bodily injury in connection with a bar fight.  Granted probation, he contends the judgment must be reversed because the trial court erred by (1) not giving a unanimity instruction, (2) not informing the jury that it could not find personal infliction of great or serious bodily injury on an aiding and abetting theory, and (3) instructing the jury on aiding and abetting without giving him sufficient notice of that theory.

1

None of defendant's contentions on appeal has merit.  Therefore, we affirm.

FACTS

After midnight on May 6, 2013, defendant and two other men entered Bulls Bar. The other two men were Lawrence Sheats (defendant's stepfather) and Steven Rodriguez. Already at the bar were Gerald Prue (who was in his late fifties) and Charisse Robinson.

Sheats sat down next to Robinson, and eventually a verbal dispute occurred between Prue and Sheats about Sheats's behavior toward Robinson.  As the dispute escalated, defendant approached from another part of the bar.  Prue warned the men that he had pepper spray.  Defendant and Sheats rushed at Prue and knocked him to the floor. While Prue was on the floor, he was kicked until he lost consciousness.  Defendant dragged Prue across the floor and taunted him, even though Prue was still unconscious.

Prue received treatment at the hospital for head, face, and elbow injuries.

The prosecution evidence consistently established that defendant was involved in the assault of Prue.  However, there were variations of exactly who inflicted what blows.

Prue told an officer investigating the incident that defendant punched him before he fell to the floor.  Prue spoke to another person about the assault and said that he did not know who hit him but guessed that it was Sheats because he and Sheats were arguing. At trial, Prue said he did not remember being punched.  He testified that he had been grabbed and pulled to the floor.

A witness in the bar, Reuben Angel, testified that he saw defendant kick Prue when Prue was on the floor.  He also saw Prue get punched, although he was not sure who did it.  But, after defense counsel showed Angel a surveillance video, Angel said he could have been mistaken about who kicked Prue.  Angel told an officer investigating the incident that defendant punched Prue, knocking Prue down, then kicked Prue while he was on the floor.

The bartender saw defendant kick Prue while Prue was on the floor.  He testified that the surveillance video did not show the entire incident.

2

Defendant testified that Prue pointed the pepper spray at him, and defendant tried to grab it. The bartender knocked defendant over, and when he got up he saw that Prue was on the ground. He moved Prue's body to find the pepper spray. He neither hit nor kicked Prue. He testified that the surveillance video showed Rodriguez kicking Prue in the head.

## PROCEDURE

A jury convicted defendant of assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); count one), with a finding that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). The jury also convicted defendant of battery causing serious bodily injury (§ 243, subd. (d); count two), with a finding that he personally inflicted serious bodily injury on the victim (§ 1192.7, subd. (c)(8)).

Finding unusual circumstances (§ 1203, subd. (e)(3); Cal. Rules of Court, rule 4.413), the trial court put defendant on five years of probation, despite the serious nature of his convictions. In doing so, the court imposed a condition that defendant serve one year in county jail.

## DISCUSSION

### I

*Unanimity Instruction*

Defendant contends that, because there were several acts that could have constituted the crimes charged, the trial court had a duty to give the jury a unanimity instruction on its own motion because the prosecutor did not elect what act constituted each crime. We disagree because no unanimity instruction is required when the crimes are committed in one continuous course of conduct. And the jury need not agree on the theory supporting each conviction.

"A requirement of jury unanimity typically applies to acts that could have been charged as separate offenses. [Citations.] A unanimity instruction is required only if the

3

jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 423.)

However, "[w]hen two offenses are so closely connected in time that they form part of one transaction, no unanimity instruction is required. [Citation.] Similarly, when a prosecutor elects to rely on multiple acts in a continuous course of conduct as one crime, no unanimity instruction is required. [Citations.]" (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1533-1534 (*Lopez*); disagreed with on another point by *People v. Lacefield* (2007) 157 Cal.App.4th 249, 258-259.)

Also, "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty. [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) For instance, "no unanimity instruction is required to prevent a less than unanimous verdict where the evidence independently proves acts which support the defendant's liability either as a principal or as an aider and abettor." (*People v. Sutherland* (1993) 17 Cal.App.4th 602, 617; see also *People v. Davis* (1992) 8 Cal.App.4th 28, 32-33, 45 [no unanimity required as to whether defendant participated directly in a robbery or only aided and abetted by staying in the getaway car].)

Here, defendant's defense was that he did not strike Prue. Instead, he merely tried to take away the pepper spray and, after Prue was on the floor, moved Prue to find the pepper spray. On the other hand, the prosecution evidence showed that defendant either struck the blows himself or aided and abetted in beating Prue. The jury credited the latter interpretation of the evidence.

Defendant argues that "some of the jurors could have concluded that [defendant] punched the victim in the face, but that Steven kicked the victim. Other jurors could have found that there was no punch, but that [defendant] pulled the victim to the ground, causing him to hit the floor. Yet others could have found that [defendant] was

4

responsible for the kick to the head, or that he aided and abetted Steven's kick to the victim's head. It is thus possible that [defendant] was found guilty based on a combination of different criminal acts determined by less than 12 jurors."

This description of the possible conviction scenarios, however, simply shows that the attack of Prue was one continuous course of conduct (*Lopez, supra,* 129 Cal.App.4th at pp. 1533-1534), and that defendant was guilty because he either administered the blows or aided and abetted someone else in administering the blows (*Russo, supra,* 25 Cal.4th at p. 1132). These scenarios do not require a unanimity instruction.

"[I]f only one criminal offense could exist as a result of the commission of various acts, the jury need not agree on which particular act (or legal theory) a criminal conviction is based, provided the jurors unanimously agree that all elements of the criminal offense are proved beyond a reasonable doubt." (*Stoner v. Williams* (1996) 46 Cal.App.4th 986, 997.) In *People v. Santamaria* (1994) 8 Cal.4th 903, the California Supreme Court gave this example: " ' "Assume a robbery with two masked participants in a store, one as the gunman and one as the lookout. If one witness makes a voice identification of the defendant as the gunman who demanded money, but other evidence, such as a fingerprint, suggests the defendant was actually holding the door open as lookout, the jury would be faced with the same theories presented in this case: find the defendant was the gunman and therefore a direct perpetrator, or find he was at the door and therefore an aider and abettor. Either way he would be guilty of robbery." If 12 jurors must agree on the role played by the defendant, the defendant may go free, even if the jurors all agree defendant committed the crime. That result is absurd.' [Citation.] Equally absurd would be to let the defendant go free because each individual juror had a reasonable doubt as to his exact role." (*Id*. at p. 920, fn. 8.)

The same is true here. Having rejected defendant's testimony that his actions were innocent, the jury could agree that defendant was guilty for the beating inflicted on Prue,

no matter how the specifics of the beating unfolded – that is, no matter who punched or kicked Prue at the various points during the attack.

## II

### *Aiding and Abetting Instruction*

Defendant contends that the trial court erred by instructing the jury on the theory of aiding and abetting without also instructing the jury that it could not find true the allegations that he personally inflicted great bodily injury if the jury found defendant guilty based on the aiding and abetting theory. The contention is without merit because the instructions concerning the personal-infliction allegations required a finding that defendant personally inflicted bodily injury. Logically, the jury could not find the enhancement allegations true if defendant only aided and abetted others in committing the crimes.

The trial court instructed the jury, using the standard aiding and abetting instruction, informing the jury that defendant could be found guilty if he "aided and abetted a perpetrator, who directly committed the crime." The instruction continued: "A person is guilty of a crime whether he or she committed it *personally* or aided and abetted the perpetrator." (CALCRIM No. 400, italics added.)

Concerning personal infliction of great bodily injury, the court instructed the jury: "If you find the defendant guilty of the crimes charged in Count 1 or 2, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant personally inflicted great bodily injury on Gerald Prue in the commission of that crime. . . ." (CALCRIM No. 3160.)

The court also instructed the jury on how to determine whether defendant personally inflicted the injury in a group assault setting:

"If you conclude that more than one persons [*sic*] assaulted Gerald Prue and you cannot decide which person caused which injury, you may conclude that the defendant personally inflicted great bodily injury on Gerald Prue if the People have proved that:

6

"1.  Two or more people, acting at the same time, assaulted Gerald Prue and inflicted great bodily injury on him.

"2.  The defendant personally used physical force on Gerald Prue during the group assault;

"AND

"3A.  The amount or type of physical force the defendant used on Gerald Prue was enough that it alone could have caused Gerald Prue to suffer great bodily injury.

"OR

"3B.  The physical force the defendant used on Gerald Prue was sufficient in combination with the force used by others to cause Gerald Prue to suffer great bodily injury.

"The defendant must have applied substantial force to Gerald Prue.  If that force could not have caused or contributed to the great bodily injury, then it was not substantial."  (CALCRIM No. 3160.)

Defendant faults this group assault instruction because it "did not inform the jury that the enhancement for personal infliction of great bodily injury may not be applied where the conviction is based on aiding and abetting, which is a theory of vicarious liability."  While it is true that the instruction did not expressly prohibit the jury from finding personal infliction by group assault if the jury convicted defendant of aiding and abetting the crimes, the effect of the instruction was to allow a true finding on the personal-infliction allegation only if defendant personally inflicted serious bodily injury.

In support of his argument, defendant cites *People v. Cole* (1982) 31 Cal.3d 568, (*Cole*), in which the Supreme Court held that the term "personally inflicts" in section 12022.7 applies to those who directly perform the act that causes the physical injury to the victim.  (*Id*. at p. 579.)  The enhancement does not apply to someone who merely assists someone else in producing injury, such as by blocking the victim's escape or

directing the attack, if the person does not personally and directly inflict the injury. (*Id.* at pp. 570-571.)

Consistent with *Cole*, this court has held that the group assault instruction in CALCRIM No. 3160 properly allowed the jury to find that he personally inflicted great bodily injury under section 12022.7, subdivision (a), even though others in the group may have caused the injury, because the instruction requires a finding that defendant directly applied force sufficient to inflict great bodily harm. (*People v. Dunkerson* (2007) 155 Cal.App.4th 1413, 1414-1415.)

The instruction on personal infliction of great bodily injury, including the group assault aspect, was properly given here. Therefore, the jury could not find true the personal-infliction allegation simply on an aiding and abetting basis without ignoring the language of the personal-infliction instruction. Accordingly, defendant's contention is without merit.

### III

#### *Notice of Aiding and Abetting Theory*

Defendant contends that his due process rights were violated because the trial court instructed the jury on the theory of aiding and abetting even though defendant was not informed of the theory until after the close of evidence. There was no violation of due process rights because the pleadings and the facts as presented at trial were sufficient notice that defendant may be guilty on an aiding and abetting theory.

After the close of evidence, the prosecutor requested the trial court to add aiding and abetting instructions to the jury instructions already submitted. She explained that "the People's belief and theory in this case is that the defendant is responsible for personally inflicting serious bodily injury and great bodily injury on the victim. [¶] However, it is possible that, based on some of the testimony – obviously, the defendant's testimony, the video in this case – that the jury could find that while he participated in this incident, he wasn't necessarily the one that inflicted the great bodily injury and that

8

he only was aiding and abetting the others who did." Defense counsel objected that this was the first he had heard of an aiding and abetting theory. The trial court concluded that defendant's own testimony put the aiding and abetting theory at issue because he claimed he did not hit Prue. The court also noted that some of the defense questioning about the video evidence suggested that Rodriguez was the one who kicked Prue. It therefore gave the aiding and abetting instruction.

As the Court of Appeal described in *People v. Quiroz* (2013) 215 Cal.App.4th 65 (*Quiroz*), "[u]nder California's practice of short-form pleading, an instrument charging a defendant as a principal is deemed to charge him as an aider and abettor as well. (§ 971.) This 'notice as a principal is sufficient to support a conviction as an aider or abettor . . . ". . . without the accusatory pleading reciting the aiding and abetting theory . . . ." ' [Citations.]" (*Id*. at p. 70.)

The information in this case charging defendant as a principal was sufficient to provide him with adequate notice of the charges against him under California law. However, the *Quiroz* court further explained: "A criminal defendant also has a federal constitutional right to ' "be informed of the nature and cause of the accusation." ' [Citation.] It is unsettled whether California's short-form pleading practice, without more, confers constitutionally adequate notice of the People's decision to proceed on an implicitly charged alternative legal theory. [Citations.] Nevertheless, we have deemed notice of a new theory to be constitutionally sufficient when the defendant is further alerted to the theory by the evidence presented at the preliminary hearing [citations], or by the People's express mention of that theory before or during trial sufficiently in advance of closing argument [citations]. What due process will not tolerate is the People affirmatively misleading or ambushing the defense with their theory. [Citations.]" (*Id*. at pp. 70-71.)

We do not have the preliminary hearing transcript in the record on appeal; however, the prosecutor began her opening statement at trial by referring to the group

nature of the attack on Prue. She said: "This case is not a case about your typical bar fight. This is a case about the group beat-down of one man committed by a pack of three adult men, led by the biggest man in the bar that night [referring to defendant]." Given this opening and the evidence throughout the trial that defendant was joined in the attack by Sheats and Rodriguez, defendant was on notice that he could be found guilty of the crimes on an aiding and abetting theory.

Furthermore, there is no evidence that the prosecution affirmatively misled the defense into a false impression that the jury would not be able to rely on an aiding and abetting theory to find him guilty. As noted, charging defendant as a principal supported conviction on an aiding and abetting theory. There was no ambush here.

In any event, by finding that defendant personally inflicted great bodily injury and serious bodily injury in connection with the two convictions, the jury based its convictions on defendant's own actions, not on a theory that defendant aided and abetted Sheats or Rodriguez. Accordingly, even assuming solely for the sake of argument that the defense did not have adequate notice of the aiding and abetting theory, the error was harmless under any harmless error standard because the jury did not rely on that theory.

### DISPOSITION

The judgment is affirmed.

NICHOLSON        , J.

We concur:

BLEASE          , Acting P. J.

BUTZ            , J.

10